UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CIVIL ACTION NO 1:22-cv-

-------------------------------------------------

Jacques Saade, petitioner          }
v.                                 }
Judge Indira Talwani, respondent,  }
First Circuit, respondent,         }
Does, future respondents/defendants. }

-------------------------------------------------

**VERIFIED CIVIL RIGHTS COMPLAINT FOR RELIEF AND INJUNCTIVE RELIEF**

It is proper to the occasion to cite some words so proper to the instance, a quotation of a dissenting US Supreme Judge who was troubled that judges are immune from personal liability (which they should) in very moving opinion that portrayed this very instance, this complaint and the allegations outlined herein. He wrote, see Pierson v. Ray, and Ray v. Pierson, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), 87 S.Ct. 1223:

"We [the Supreme Court] should, of course, not protect a member of the judiciary 'who is in fact guilty of using his [or her] powers to vent his [/her] spleen upon others [petitioner], or for any other personal motive not connected with the public good'. Gregoire v. Biddle, 2 Cir., 177 F.2d 579, 581. To deny recovery to a person injured by the ruling of a judge acting for personal gain or out of personal motives would be 'monstrous.'"

He continued, @ 87 S.Ct.1224:

"This is not to say that a judge who makes an honest mistake should be subjected to civil liability. It is necessary to exempt judges from liability for the consequences of their honest mistakes. The judicial function involves an informed exercise of judgment.

But that is far different from saying that a judge shall be immune from the consequences of any of his [her] judicial actions, and that he [she] shall not be liable for the knowing and intentional deprivation of a person's civil rights. **What about the judge who knowingly turns a trial into a 'kangaroo' court? Or one who intentionally flouts the Constitution** in order to obtain a conviction? **Congress, I think, concluded that the evils of allowing intentional, knowing deprivations of civil rights to go unredressed** far outweighed the speculative inhibiting effects which might attend an inquiry into a judicial deprivation of civil rights. **The plight of the oppressed is indeed serious**.

There is another proper citation that worthy to note is what Supreme Court Chief Judge Roberts wrote in his annual citation that is more recently, few weeks ago on December 31, 2021, his assessment of "Year-End Report on the Federal Judiciary". He embarked on issues related to this instance. He expressed concerns of *"public's confidence"* in the federal courts. He also noted another concern, the selective judicial assignments by plaintiff, in my case by the removing defendants, that was the opposing lawyer forcefully demanded that no one else but the respondent Judge Indira Talwani, hears and determines the instant controversy in six actions that he removed from the state courts and from other sessions, three from very conscientious and gifted two judges, Saris and magistrate Dein. Chief Roberts noted that he has "asked the Director

of the Administrative Office, who serves as Secretary of the Judicial Conference to put the issues before the Conference."

## INTRODUCTION

1.    Petitioner after seven years constant traumas seeking to be heard and have his day in court unsuccessfully thwarted by the opposing lawyer removing the number of actions which petitioner initiated to adjudge this controversy to the same judge, Judge Indira Talwani, followed by frivolous motions to dismiss and other false averments in which were blindly sustained, is left with no alternative but to invoke the constitution and bring this action seeking the prayed relief. That is to be afforded due process of law and the applicability of governing law, statutes enacted by the congress and Massachusetts lawmakers that shall be applied equally as mandated by the constitution and acts of congress under 42 U.S.C. § 1981, 42 U.S.C. § 1983.

2.    Not only petitioner was deprived of his due process granted by the constitution and acts of congress, but he was sanctioned yet allowing the opposing lawyer's motion for same in the 2018 removed action. The motion for sanction was another utterly frivolous motion by the opposing lawyer that was identical to every motion he ever tendered in this long controversy, that lacked any substance of fact or law as will be detailed herein.

3.    Regrettably Judge Talwani has constantly adopted each and every one of the baseless motions and false pleadings the opposing lawyer ever submitted in this long controversy, perhaps assuming that these averments were truthful being submitted by a lawyer and under Rule 11 certifying to be true and *"not being presented for any improper purpose"* as mandated by said Rule and controlling precedent of both the First Circuit and district court. Instead, she allowed these frivolous motions that devoid of any factual or legal support whatsoever and rendered rulings that were so bias and maliciously detrimental that have caused, and are causing, the petitioner grave irreparable harms and unsustainable detriments financially and otherwise as will be pled and illustrated herein. These rulings were bias and unconstitutional and cannot be sustained under such grounds alone and shall be reversed.

4.    Ultimately the sanction order and the dismissal of the 2018 removed action 18-11534 cannot be sustained and shall be vacated under other grounds, the district court lacked jurisdiction to hear and dismiss the removed action under the controlling precedent of the First Circuit, where it reversed a dismissal in a similar circumstance, see *Mills v Harmon Law Offices, P.C., Salem Five Cents Savings Bank et al* , 344 F.3d 42 (2003). This action among other things seeks similar relief and to vacate the rulings rendered on May 13, 2019 in the 2018 removed action 18-11534; and to remand said action back to the Land Court as action 18 MISC 000319.

5.    Notwithstanding, and even if the district court had the jurisdiction to preside over the removed action 18-11534, the rulings rendered in said case, as well each and every ruling she

ever rendered adopting blindly the false pleadings of the opposing lawyer, devoid of any substance of law or fact, reversing the controlling law precedent, and totally arbitrary, bias and therefore unconstitutional.

6.      This action asserts that Judge Talwani acted recklessly to constantly render rulings blindly adopting the opposing lawyer's false averments and frivolous motions to dismiss and to deny each claim the petitioner ever pled.

7.      The most detrimental ruling perhaps was perhaps the sanction order that she issued allowing the opposing lawyer's baseless demand to sanction petitioner that lacked any factual or legal justification whatsoever. Although said motion, and each other motions the opposing lawyer tendered, was grossly willfully deceiving and frivolous, but Judge Talwani sustained recklessly inflicting upon petitioner such undue detriments without any conscientious consideration to her malicious and meritless rulings to be detailed herein.

8.      Notwithstanding, petitioner was dragged to this court by the opposing lawyer and demanded that the instant claims and various actions be dismissed, Judge Talwani blindly allowed the motions to dismiss depriving petitioner of his due process of law. Petitioner respectfully points out and cites the instruction rendered by the First Circuit that mandates the federal court to uphold the law of the forum state. See *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 775 F.3d 109, @116 (1stCir):

"[W]e apply the substantive law of Massachusetts. *See Dykes v. DePuy, Inc.*, 140 F.3d 31, 39 (1st Cir.1998) ("When facing a claim that does not arise under the Constitution or the laws of the United States, **a federal court must apply the substantive law of the forum in which it sits**"); *see also O'Brien v. Skinner*, 414 U.S. 524, 531, 94 S.Ct. 740, 38 L.Ed.2d 702 (1974).

9.      Regrettably, petitioner was deprived this protocol. And the consequences were so devastating. Petitioner was deprived of his due process of law; he was sanctioned for seeking to have his day in court; he was driven to bankruptcy that triggered two loans to be accelerated forcing petitioner to sell properties in distress fashion. Collectively this travesty of justice has caused and continues to cause petitioner irreparable harms and monetary losses in the millions. The sanction order has been maliciously detrimental devastating his livelihood precluding petitioner to obtain work project financing, and destroying his standing in various aspects. A simple google search reveals the sanction and other bias rulings that were based on the false averments and fraud on the court and false averments of the opposing lawyer.

10.     This was not all, On top of all these detriments the petitioner has sustained, on October 12, 2021 the opposing lawyer maliciously recorded in the Suffolk registry of deeds the May 13, 2019 sanction rulings and other meritless rulings rendered in this controversy. Said October 12, 2021 recordings were intended to further harass petitioner and inflict upon him the ultimate of

irreparable harms, and preclude him of securing financing and other lively prospects. The October 12, 2021 malicious recordings were solely intended to further harass and devastate petitioner, where such wrongful conduct was prohibited by acct of congress under 15 U.S.C. § 1692d. No civilized society shall tolerate this despicable and unlawful conducts and injustice recording rulings that neither the applicable law nor facts can justify. This is beyond belief that would take place in this nation of law that has this sacred constitution that mandates due process of law. This action is warranted at once to vindicate this injustice and obtain the proper relief to vacate the sanction order and to dissolve the materials that opposing lawyer maliciously recorded with the registry of deeds on October 12, 2021; and obtain other relief that a court of conscience deemed just and appropriate including vacating the dismissal ruling of the 2018 removed action 18-11534 and to remand the action back to state court since the district court lacked jurisdiction over this removed action under act of congress affirmed by case law.

11.     The sanction order was unjustifiable as will be illustrated below. However there was another equally malicious and unconstitutional ruling rendered by Judge Talwani parroting the opposing lawyer motion for it. This is mentioned in the onset to give flavor of the endless bias and astounding rulings rendered in this long controversy grossly denying petitioner his due process and render rulings allowing the opposing lawyer's false averments that the cause of action be denied and dismissed. This very troubling ruling was regarding petitioner's cause of action to determine what could be lawfully owed in this instance. Keep in mind that there were several authorities afford petitioner such standing to do so, (to be cited in turn). To the contrary the opposing lawyer submitted under Rule 11 that such cause of action should be dismissed under res judicata citing cases disposed and dismissed in 2016 and 2017 where the amount of any alleged debt changes constantly, specifically since there were countless outfits claimed and disclaimed owner of the subject (discharged) debt. She dismissed this cause of action and allowed the opposing lawyer's argument that it should be dismissed under res judicata ground. She justified the ruling stating that the opposing lawyer submitted an affidavit of what his clients demand. This ruling perhaps would only take place in some barbaric and totalitarian places and not in this nation of law that has such sacred constitution. The instant ruling was not the only outrageous ruling rendered in this saga as will be outlined herein.

12.     The short of it is that Judge Talwani crossed the line of reason, logic and law, abusing his discretion to blindly and constantly sustain the opposing lawyer's deliberate motions and false averments that lacked any merits, and in total disregard to the requirements set forth by said Rule 11, and the controlling law on pleadings practice as instructed by both the First Circuit and district court.

13.     It is worthy to cite the First Circuit's instruction rendered in *Salois v. Dime Sav. Bank of N.Y.*, 128 F.3d 20, 28 (1st Cir.1997): "*Rule 11 calls for the imposition of sanctions on a party "for making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an 'improper purpose'*"; also see the memorandum that Judge Stearns

articulated in *McCarty v. Verizon New England, Inc.*, Ca 1:09-cv-10991-RGS D# 37, 03/25/11: "Rule 11 "requires [the opposing lawyer] to '*stop and think' before making and submitting pleadings. The Rule "also, however, emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable"*. (emphasis added)

14.     The controversy will be detailed herein, entailed forum-shopping removals of actions petitioner initiated in the state court in which the opposing lawyer removed and followed by motions to dismiss falsely averring under Fed. Rule 11 of Civ. P. that the pleadings were truthful and "*(1)not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and, (2) the defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; and, (3) the factual contentions have evidentiary support*". As will be illustrated, each and every motion, pleading or averment the opposing lawyer made was deliberately false and deceiving intended to mislead Judge Talwani which did.

**THE LITIGATION HISTORY**

15.     This controversy was first removed in 2015 and again in 2018 to the same judge by the same lawyer who followed with frivolous motions to dismiss that lacked any factual or legal merits and in gross violation of Rule 11 that expressly prohibits such improper legal practice. Judge Talwani blindly parroted the motions and dismissed the actions after were kept dormant for extended time ranging of one year to one and half years. The delays were another prejudicial aspect of these removals to the same judge, Talwani, J. as detailed herein.

16.     The rulings of dismissing each and every claim that petitioner pled allowing the opposing lawyer's frivolous motions to dismiss were indeed troubling to deny someone due process of law and deprive him of his day in court and inflict upon him such undue irreparable harms. And this was not all.

17.     As noted, the opposing lawyer, enjoying his success that Judge Talwani blindly allowed each and every frivolous motion and pleading he ever tendered, he then filed a motion to sanction petitioner in the 2018 removed action. She once again blindly allowed this egregious demand, and rendered a ruling on May 13, 2019 allowing the motions to dismiss the 2018 removed action 18-11534 and allowed the opposing lawyer's demand to sanction petitioner for seeking due process of law

18.     These egregious rulings were so maliciously bias that would only take place in some totalitarian places. No one expects such injustice would take place in this nation of law that has a sacred constitution, and acts of congress under 42 U.S.C. § 1981, 42 U.S.C. § 1983 that mandate due process and equal opportunity of the benefits of the law to all.

19.     As noted above the sanction has been utilized to inflict upon petitioner undue detriments and irreparable harms to also include damaging his standing and precluding him to prosper in business and obtain work projects financing, that further devastates petitioner's livelihood. A simple google search reveals the bias rulings and sanction order that Judge Talwani rendered allowing the opposing lawyer's demand for same.

## THE OPPOSING LAWYER(S)' LATEST MALICIOUS CONDUCTS DEVASTATING PETITIONER- THIS ACTION IS URGENTLY WARRANTED

20.     To put this matter in perspective, it is first noteworthy to cite the instant episode of the opposing lawyer as noted above. The opposing lawyer(s)' continuation of grossly egregious conducts to devastate the petitioner and further humiliate and harass him, here in this instance entailed recording with the Suffolk registry of deeds on October 12, 2021 the May 13, 2019 sanction order as well all the various bias dismissal rulings rendered by Judge Indira Talwani that allowed the opposing lawyer's frivolous motions to dismiss the removed actions that were filed to vindicate this controversy. The opposing lawyer's episode purposelessly recording the mentioned materials in two books: 66458 and 66459 which were calculated to further harass petitioner and inflict further undue irreparable harms. The instant egregious episode was an act prohibited under 15 U.S.C. § 1692d actionable under 93A that on remand the petitioner will seek the proper relief augmented under 93A.

21.     Notwithstanding, as noted above, petitioner was dragged to this court by the opposing lawyer and demanded that the causes of action and civil actions be dismissed, Judge Talwani blindly allowed the motions to dismiss depriving petitioner of his due process of law. These claims included allegations of the opposing lawyer' clients willfully defying to comply with controlling law; violations to comply with statutes and regulations included but not limited to violation of G.L.c. 244 § 35A and G.L.c. 244 § 35B and 15 U.S.C. § 1692 et seq; violation to comply with various commonwealth of Massachusetts regulations specifically as outlined in Title 209 Sections 18.21 and 18.21A among other law.

22.     Violation of state regulations and statues, 209 CMR 18 et seq and G. L.c. 244 § 35A and G.L.c. 244 § 35B give rise to 93A claims and affords relief of triple damages and attorney's fees under 93A, see 940 CMR 3.16(3);

23.     Likewise violations of 15 U.S.C. § 1692 et seq also give rise to 93A claims, see 940 CMR 3.16(4); furthermore, violations of 15 U.S.C. § 1692d give rise to 93A claims under other path as instructed by the First Circuit in *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 775 F.3d 109, @122-123 (1stCir). The court wrote: "The FDCPA explicitly provides that a violation of its provisions "shall be deemed an unfair or deceptive act or practice in violation of" the FTC Act. 15 U.S.C. § 1692l(a) []And because Massachusetts has "wholly incorporated" the

FTC Act and its interpretation into state consumer protection law, a violation of the FDCPA not only per se violates the FTC Act, it also constitutes a per se Chapter 93A violation." 93A provide. Petitioner is entitled to monetary damages augmented three times and attorney's fee and cost as prescribed by 93A not only regarding the October 12, 2021 malicious recording but all other improper and unlawful acts that the petitioner's opponents had willfully made as will be detailed here.

**THE OPPOSING LAWYER'S PLEADINGS AVERMENTS WERE IN WILLFUL AND TOTAL DISREGARD TO RULE 11- JUDGE TALWANI ACTED RECKLESSLY TO CHRONICALLY PARROT**

24.     It is also warranted to point out in this onset that each and every pleading the opposing lawyer and his coworker ever tendered in this long controversy was utterly frivolous and devoid of any substance of law or fact. Throughout this long controversy, the opposing lawyer would remove the actions and demanded that no other than Judge Talwani hears and determines this matter; he would follow with motions to dismiss that Rule 11, and the controlling law of the First Circuit and the district court that prohibit such frivolous pleadings. Unfortunately Judge Talwani has continuously blindly adopted these motions presumably as being submitted by lawyer(s) certifying to the court under Rule 11. Said Rule mandates that pleadings submitted are construed that the "*attorney formed an inquiry reasonable under the circumstances that it is not being presented for any improper purpose, such as to harass, cause unnecessary delay; and the defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law*" as prescribed by Rule 11(b). The First Circuit also affirmed these requirements of Rule 11 in *Salois v. Dime Sav. Bank of N.Y.*, 128 F.3d 20, 28 (1st Cir.1997): "*Rule 11 calls for the imposition of sanctions on a party "for making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an 'improper purpose.'"*; the district court had similar instruction regarding pleading requirements under Rule 11. The court articulated that pleadings submitted to the court are construed that it was submitted after the opposing lawyer "*conduct[ed] a reasonable inquiry and determined that any papers filed with the court [were] well grounded in fact, legally tenable, and 'not interposed for any improper purpose.' An attorney who signs the paper without such a substantiated belief 'shall' be penalized by 'an appropriate sanction.'*

25.     There were very troubling and bias rulings rendered by Judge Talwani parroting blindly the opposing lawyer's misleading pleadings and false averments. There were some rulings that were beyond belief to would occur in this nation of law. One was to deny the petitioner standing to adjudge the fraudulent conveyance of the title of the subject property by fabricating fake assignment claimed to be made by MERS as will be fully detailed herein. Another beyond belief ruling was to deny petitioner a standing to resolve what could be lawfully owed if the mortgage

had not been extinguished. The opposing lawyer averred under Rule 11 that the instant objective should be dismissed under res judicata. The argument was beyond ludicrous when the amount of any alleged debt changes constantly specifically when the ownership of the alleged debt had changed countless times in this long controversy. The debt collectors would abandon ownership of the subject claim when they were notified that their claim was null since it was derived out of the fabricated 2011 MERS assignment that cannot be sustained under the applicable and governing controlling law as will be pled in detailed herein. Judge Talwani allowed the instant motion to dismiss citing that the opposing lawyer submitted an affidavit of what' owed. This was beyond belief that such ruling would be rendered in this nation of law that has a constitution that mandates due process of law.

26.    Judge Talwani acted in gross recklessness to blindly parrot these false pleadings to include the motion to sanction petitioner for seeking his due process and vindicate the wrongful acts. The sanction order has been inflicting upon petitioner malicious and irreparable harms to be detailed herein. The First Circuit rubberstamped these erroneous rulings that appellate courts throughout the nation always do both on both federal and state level.

27.    Petitioner is left with no other means for relief and justice but to bring this action and name Judge Talwani respondent and give her this forum to refute these allegations of bias and malicious and bias rulings rendered against petitioner that reversed every pertaining governing law and denied him the benefits and applicability of various governing statutes and regulations, and this was grossly unconstitutional to render such rulings singling out the petitioner for disparate treatment and deprive him of the benefit of the governing laws inflicting upon grave irreparable harms. The May 13, 2019 sanction order, and now the October 12, 2021 recording these baseless rulings are causing the petitioner further undue and unconscionable irreparable detriments. A court of conscience, equity and law should not allow this injustice to go on forever. This action is proper and warranted to redress this injustice and prevent further irreparable harms upon petitioner.

28.    Moreover as noted above, Judge Talwani lacked jurisdiction to enter the May 13, 2019 ruling under *Mills supra*, and this further supports the instant relief and to vacate the dismissal of removed action 18-11534 and order for the dissolution of the October 12, 2021 malicious recording the sanction order with the registry of deeds. Petitioner seeks an immediate hearing and adjudging this action to spare him further irreparable harms where the debt collectors are moving to foreclose on a void mortgage defying compliance with all applicable governing laws that also make such foreclosure to be unlawful under the controlling laws as illustrated herein.

29.    It is warranted to point again what noted above regarding a troubling concern to deprive someone due process law, coupled with selective judicial assignments that Chief Judge Roberts cited as a concerning matter among other things that is/are eroding the public's trust in the federal courts. This is troubling and was expressed by Chief Judge expressing this and other

concerns in his annual report, the "2021 Year-End Report on the Federal Judiciary" that included concerns of the *"public's confidence"* in the federal courts and selective judicial assignments.

30.     Petitioner invokes the constitution and acts of congress under 42 U.S.C. § 1981, 42 U.S.C. § 1983 to bring this action to redress this injustice that amounted to inhumane and cruel and unusual punishment that only would take place in some totalitarian nation and no expect that would take place in civilized community and in this nation of law.

31.     Court of conscience, equity and law shall not allow this inhumane injustice to go on forever. Petitioner seeks the cited relief and any other relief and injunctive relief that the court of conscience finds just and appropriate.

**PETITIONER WAS DEPRIVED OF THE BENEFITS OF CONTROLLING LAW AND REGULATIONS IN EACH AND EVERY CLAIM HE EVER BROUGHT**

32.     The short of it, as will be illustrated, petitioner was deprived of his due process of law; deprived of the applicability of controlling law precedent reversing governing case law that trial judge lacks such authority to do; petitioner was deprived of the benefits of certain statutes enacted by legislator intent specifically G.L.c. 244 § 35A and G.L.c. 244 § 35B and 15 U.S.C. § 1692 et seq; deprived of the benefits of various commonwealth of Massachusetts regulations specifically as outlined in Tile 209 Section 18.21A: *"(1) A third party loan servicer may not use unfair or unconscionable means in servicing any mortgage loan. Without limiting the general application of the foregoing, the following conduct is a violation of 209 CMR 18.21A: [] (c) Failing to comply with the provisions of M.G.L. c. 244, §§ 35A, 35B or 35C regarding the right to cure a mortgage loan default and other requirements* and *(d) Knowingly or recklessly facilitating the illegal foreclosure of real property collateral."*; and 209 CMR 18.21: Unfair Servicing Practices – *"A third party loan servicer may not use unfair or unconscionable means in servicing any loan. Without limiting the general application of the foregoing, the following conduct is a violation of 209 CMR 18.21: (3) Requiring the unnecessary forced placement of insurance, when adequate insurance is currently in place."*

33.     These deprivations were indeed unprecedented. And yet when petitioner sought relief for damages inflicted upon him due to his opponents' defiance to comply with the cited governing statues and law, Judge Talwani also allowed the opposing lawyer to dismiss these claims pled in action 118-11873. The dismissals of these claims for relief were so prejudicial and arbitrary that lacked any factual or legal justification whatsoever. These bias rulings were indeed unconstitutional.

34.     Note also that defying to comply with the cited statutes, G.L.c. 244 § 35A and G.L.c. 244 § 35B, and move to foreclose on a void mortgage were the unlawful practices that troubled the congress to enact regulations that prohibit such practices. 15 U.S.C. § 1692(a) summarizes the

instant unlawful wrongful practices. The congress said: "*There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy*".

## THE CONTENTIONS- SPECIFICALLY THE SANCTION ORDER AND THE OPPOSING LAWYER'S MALICIOUS RECORDING WITH REGISTRY OF DEEDS

35.     The current undue harms that being inflicted upon petitioner are related among other things specifically to the sanction order that allowed the opposing lawyer's motion to sanction petitioner for seeking to relief for the wrongful acts committed by his opponents regarding this controversy that was subject to numerous actions, six were removed to the same district judge by the opposing lawyer forcefully demanding that these actions are determined by her. He followed with motions to dismiss that were utterly frivolous as will be pled herein. Initially the opposing lawyer argued in the 2015 removed action in campaigns to prevent petitioner to adjudicate the instant controversy specifically the contention regarding the fraudulent conveyance of the subject mortgage that had been discharged arguing that petitioner lacked standing to adjudge this claim; consequently Judge Talwani sustained the opposing lawyer's frivolous motion to dismiss and after one and half years she dismissed the 2015 removed action depriving the petitioner of his day in court.

36.     And when in 2018 standing was provided by the so-called paragraph 22 as was affirmed by various cases, (see *Pinti v Emigrant Mortgage Co.* 472 Mass 226, 33 N.E. 3d 1213 (2015); *Federal Natl. Mort. Assn. v. Marroquin*, 477 Mass. 82 (2017) among many other cases), petitioner invoked said authority and brought an action in the Land Court, 18 MISC 000319, the opposing lawyer removed the action to the same judge, Judge Talwani, and followed with his typical frivolous motion to dismiss the removed action (18-11534) arguing this time that the action should be dismissed under res judicata. The motion was utterly frivolous since the previous dismissal was dismissal for lack or standing, where dismissals for lack of standing that do not adjudge the merits of the issues are dismissals without prejudice. See *Lemelson v U.S. Bank Nat'l Assoc.*, No. 12-10677-PBS, 2012 WL 4527527, *4 (D. Mass Sept. 28, 2012). Judge Saris wrote:

"Magistrate Judge Collings determined that Lemelson lacked standing in federal court to bring a quiet title action, and recommended that I remand the case to state court pursuant to 28 U.S.C. § 1447(c). See Lemelson v. U.S. Bank Nat'l Ass'n, No. 11-cv-12050-PBS, Doc. 16 at 9 (D. Mass. Mar. 7, 2012)"

Judge Saris concluded the ruling stating that "**the dismissal was without prejudice** to challenge the foreclosure in **state court.**" (emphasis added to stress that the dismissal of claims that have

exclusive jurisdiction of the state court is a dismissal without prejudice in removals and shall be adjudged in the state court).

37.     Therefore the opposing lawyer's motion to dismiss the 2018 removed action was utterly frivolous; and yet, his motion to sanction petitioner to seek to vindicate the claims pled in the 2018 removed action was despicably frivolous that lacked any bases of reason, logic, fact or law. in fact both motions for sanction and motion to dismiss the 2018 removed action citing res judicata as  ground constituted fraud on the court and indeed justified reprimand under Rule 11, and the instructions of both First Circuit in *Salois, supra* and the district court, *McCarty v. Verizon New England, Inc., supra.* (Judge Stearns) that *Rule 11 calls for the imposition of sanctions on a party "for making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an 'improper purpose.'"* (1 St Cir); and that pleadings and averments tendered to the court must be truthful and that he has "*conduct[ed] a reasonable inquiry and determined that any papers filed with the court [were] well grounded in fact, legally tenable, and 'not interposed for any improper purpose.' An attorney who signs the paper without such a substantiated belief 'shall' be penalized by 'an appropriate sanction.'* (emphasis added).

**THE DISPUTE**

38.     At this stage it is helpful and warranted to note few words regarding this dispute. The main contention of this controversy is that the subject mortgage was discharged by then-owner and claimed it loss in 2011 when the mortgage monthly payment was modified. Apparently then-owner found it more profitable to claim it loss after the monthly payment was modified, however this is not relevant to this controversy. Rather subsequently two entities each claimed ownership of the discharged mortgage.

39.     The dispute arose when the servicing was abruptly changed and the new servicer notified petitioner that it was not willing to accept the monthly payment attached is said copy, exhibit 1.

40.     Petitioner made a request pursuant to 12 U.S.C. § 2601 *et seq.* RESPA, upon the servicer to identify the claimed owner of the subject mortgage, it replied and identified it as SWDNSI Trust, attached hereto is a copy as exhibit 2

41.     However another outfit also claimed ownership of the subject mortgage. PennyMac claimed ownership of it by fabricating a mortgage assignment dated 2011 claiming that it was made by a myth called MERS. The assignment cannot pass muster the fact or law. Attached hereto is copy of said assignment, exhibit 3.

42.     Note also that on the same day of the MERS assignment with an effective date of March 30, 2011, the mortgage and note were also transferred by the same individual to a trust clearly

owned by PennyMac from its name, the trust called PennyMac Loan Trust 2011-NPL1 also with an effective date of March 30, 2011, see copy of said assignment attached hereto as exhibit 4.

43.     Ironically the purported 2011 MERS assignment claimed to assign both the <u>mortgage</u> and <u>note</u> to PennyMac on behalf of Mortgage Lenders Network USA ("MLN") in 2011 when MLN was defunct and out business in 2007 was a clear evidence that said purported MERS assignment was fabricated and deceit. In addition, the purported 2011 MERS assignment also claimed that MERS assigned the note to PennyMac when "*MERS never held the note*" as observed by the First Circuit. Therefore the purported MERS assignment could not be truthful as a matter of fact.

44.     Note that courts who reviewed such MERS assignments that purportedly were made on behalf of defunct entities (here in this instance was MLN) rejected to find them valid. See *In re LOPEZ et al v. Mortgage Electronic Registration Systems, Inc.et al*, 486 B.R. 221, Bankruptcy Case # 09–45463–HJB, Adversary No. 10–04057, Jan. 3, 2013. See also *In re Bailey v. Wells Fargo*, 468 B.R. 464, 474–75 (Bankr.D.Mass. 2012) (see footnote 16). These cases also rejected the arguments that homeowner lacks the right to challenge the validity of such fabricated mortgage assignments.

45.     Furthermore, courts that reviewed assignments of notes effectuated by MERS rejected to find them valid. The subject purported 2011 MERS assignment claimed to also grant the note to PennyMac which was another telling that the assignment was a deceit when MERS never had ownership of the note, (see copy of the MERS purported assignment, exhibit 3). Quoting the First Circuit's remark on this issue: "*it is plain, however, that MERS never held the note*". See footnote 8, *Culhane v. Aurora Loan Servs. of Nebraska*, 708 F.3d 282 (2013). "*The upshot of [MERS] does not have any beneficial interest in the loan*", 708 F.3d @287. The Land Court made similar observation, see *Schaefer-Ung v. U.S. Bank et al* 12 MISC 469684 in which the court (Judge Foster, June 10, 2014) also questioned the validity of MERS assignments to assign the note.

46.     The validity of the 2011 purported MERS assignment and the fate of the discharged mortgage are the main contention of this controversy, that is the subject mortgage had void. This was one issue pled in the 2015 removed action.

47.     Note also that subsequent the 2011 discharge of the subject mortgage, countless entities also claimed ownership of this discharged mortgage, but they would abandon their claim after petitioner notified them under 93A that their claimed of ownership was the product of deceit that was based on the 2011 fake mortgage assignment under the name of MERS that had no validity. Furthermore Massachusetts law provides that "*If the obligation underlying the mortgage has been[]otherwise discharged, the mortgagor may maintain a suit to compel the cancellation of the note and a discharge of the mortgage*". See *Beaton v. Land Court*, 367 Mass. 385 @ 392, 326 N.E.2d 302, (1975).

48.     Petitioner demanded proof from these various debt collectors that illustrates that the mortgage had not been discharged in 2011, none was provided. But consequently and after six years being assigned from one outfit to another, the mortgage was reassigned back to PennyMac in or about November 2017, and a week or so later it was assigned to a purported trust called MFRA Trust 2014-2 and Wilmington Trust and Fay Servicing.

49.     Another one of these contentions is that these outfits moved to foreclose in 2018 without complying with various statutory requirements set forth in G.L.c. 244 § 35A and G.L.c. 244 § 35B. Such defiance to comply with the cited statutory requirements would make the acceleration and foreclosure unlawful and would invalidate any prospective foreclosure under governing controlling case law. See generally the SJC's instruction in *Schumacher U.S. Bank v. Schumacher*, 467 Mass. 421, 5 N.E.3d 882 (2014)*; Bank of New York Mellon Corp. v. Wain*, 85 Mass.App.Ct. 498, 11 N.E.3d 633, 636, (Mass. App. Ct. 2014) citing the mandatory compliance with said § 35A.

50.     As noted the debt collectors' conducts not to only move to foreclose on a void mortgage but moved to foreclose without complying with the statutory requirements set forth in G.L.c. 244 § 35A and G.L.c. 244 § 35B, where such defiance also constituted deceptive and unlawful practice that 93A declares it unlawful and actionable under 93A, and affords petitioner relief of triple damages and attorney's fees for damages he incurred (to include being forced into bankruptcy) due to his opponents' defying to comply with the cited regulations enacted by legislator intent. Denying petitioner such relief as provided by controlling law was unreasonable bias and unconstitutional. And yet to sanction someone for seeking due process of law was simply outrageous that would take place in this nation of law. This action is the proper means to redress the allegations.

**THE FRIVOLOUS PLEADINGS AND BIAS RULINGS**

51.     The motions and pleadings submitted throughout this controversy by the opposing lawyer (and lately by his coworker) were utterly frivolous and in defiance to Rule 11 that forbids such frivolous averments. Yet Judge Talwani blindly parroted and allowed these astounding motions to reverse controlling law precedent in which trial judges lack such authority, which she did in each and every ruling she rendered in these dismissed actions that opposing lawyer removed to her demanding that she is the one to determine this matter. And here some of these episodes.

**THE FIRST REMOVED ACTIONS 15-12275 AND 15-13611**

52.     The opposing lawyer removed the 2015 actions without any service of process and followed with the typical motion to dismiss making several deceiving arguments and false averments to justify dismissing the action. He argued that petitioner defaulted, and then argued

that the defaulted consumer lack standing to vindicate the fraudulent conveyance of the subject mortgage; he next argued that the purported MERS assignment was made by 'vice president of MERS' and because it was recorded with the registry of deeds, it is therefore valid; he then argued that the instant claim should be dismissed in such circumstances and the homeowner lacked standing to vindicate the instant conveyance. The pleadings and averments were willfully false. Judge Talwani blindly adopted these misleading averments and dismissed the case.

53.    The facts and law are otherwise. Petitioner did not default, rather the mortgage was discharged by then-owner and claimed it loss when the mortgage payment was modified. Subsequently the servicing was changed and then-new servicer refused to accept the payment, see exhibit 1.

54.    Also contrary, the purported 2011 MERS assignment was not made by "vice president of MERS" as the opposing lawyer averred in his motion to dismiss, rather said purported MERS assignment claimed that it was made by a "representative", see exhibit 3;

55.    Next rebuttable to the argument that an assignment would be valid if it was recorded[FN1] with the registry of deeds, case law rendered by Massachusetts highest court instructs otherwise. See *Bevilacqua v. Rodriguez*, 460 Mass. 762, 772 (2011). The SJC rejected the notion that "recording" fake instruments and assignments of mortgage would make it valid. The SJC wrote:

"there is nothing magical in the act of recording an instrument with the registry that invests an otherwise meaningless document with legal effect. See *S & H Petroleum Corp. v. Register of Deeds for the County of Bristol*, 46 Mass.App.Ct. 535, 537, 707 N.E.2d 843 (1999) ("The function of a registry of deeds is to record documents. It is essentially a ministerial function ..."). Recording may be necessary to place the world on notice of certain transactions. See, e.g., G.L. c. 183, § 4 (leases and deed); G.L. c. 203, §§ 2 – 3 (trust documents). **Recording is not sufficient in and of itself, however, to render an invalid document legally significant.** See *Arnold v. Reed*, 162 Mass. 438, 440, 38 N.E. 1132 (1894); *Nickerson v. Loud*, 115 Mass. 94, 97– 98 (1874)" (emphasis added).

**FN1**: The First Circuit wrote that this notion that a dubious mortgage assignment is deemed valid just because it was recorded should *"be disparaged"* at the lawmakers not on court. *Wilson v. HSBC Mortgage Services, Inc.*, 744 F.3d 1, No. 13–1298, 2014 ( 1 St Cir): *"We said in Culhane [Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 289 (1st Cir.2013)] *that while this type of practice "can be disparaged on policy grounds, such policy judgments are for the legislature, not the courts".* The First Circuit expanded this point and wrote: *"While MERS's practice of appointing employees of member firms as certifying officers can be disparaged on policy grounds, such policy judgments are for the legislature, not the courts. As the Supreme Court explained, "[c]ourts may not create their own limitations on legislation, no matter how alluring the policy arguments for doing so." Brogan v. United States,* 522 U.S. 398, 408, 118 S.Ct. 805, 139 L.Ed.2d 830 (1998)"

56.     Despite these venerable authorities that instruct otherwise (*Bevilacqua supra*), Judge Talwani adopted the opposing lawyer's deceiving pleadings and allowed the motion to dismiss reversing case law precedent as noted herein and denied petitioner standing to vindicate this matter rendering that petitioner homeowner lacks standing to challenge the assignment of the mortgage and note and dismissed the 2015 removed action on November 23, 2016 after it was kept dormant for a year and half. Attached is said ruling as exhibit 5. This ruling reversed case law precedent; and there were other several bias and arbitrary rulings rendered in the 2015 dismissal that reversed case law precedent that will be cited in turn.

57.     First as noted above, the purported 2011 MERS assignment (see exhibit 3) claimed to assign both the <u>mortgage</u> and <u>note</u> to PennyMac on behalf of Mortgage Lenders Network USA ("MLN") in 2011 when MLN was defunct and out business in 2007 was a clear evidence that said purported MERS assignment was fabricated and deceit. Therefore the purported MERS assignment could not be truthful as a matter of fact.

58.     As noted above, courts who reviewed such MERS assignments that claimed to be made on behalf of defunct entities rejected to find them valid. See *In re LOPEZ et al v. Mortgage Electronic Registration Systems, Inc.et al*, 486 B.R. 221, Bankruptcy Case # 09–45463–HJB, Adversary No. 10–04057, Jan. 3, 2013. See also *In re Bailey v. Wells Fargo*, 468 B.R. 464, 474–75 (Bankr.D.Mass. 2012) (see footnote 16). These cases also rejected the arguments that homeowner lacks the right to challenge the validity of such fabricated mortgage assignments.

59.     Also as noted above, courts that reviewed assignments of notes that were effectuated by MERS questioned their validity. The instant purported 2011 MERS assignment claimed to also grant the note to PennyMac which was another telling that the assignment was a deceit when MERS never had any ownership of the note, (see copy of the MERS purported assignment, exhibit 3. Quoting the First Circuit's view on this issue: *"it is plain, however, that MERS never held the note"*. See footnote 8, *Culhane v. Aurora Loan Servs. of Nebraska*, 708 F.3d 282 (2013). *"The upshot of [MERS] does not have any beneficial interest in the loan"*, 708 F.3d @287. See also the Land Court's similar observation in *Schaefer-Ung v. U.S. Bank et al* 12 MISC 469684 in which the court (Judge Foster, June 10, 2014) questioned MERS assignments to assign the note.

60.     Therefore the validity of the 2011 purported MERS assignment and the fate of the discharged mortgage are the main contention of this controversy, that is the subject mortgage had void. This was one issue pled in the 2015 removed action but the merits were never adjudged or even heard.

61.     Furthermore, the opposing lawyer was prohibited under Rule 11 to make false averments starting in the 2015 removed action that plaintiff stopped making the monthly payments and that he defaulted, as such petitioner was precluded to vindicate the fraudulent conveyance of the devious MERS assignments the mortgage and note. The opposing lawyer's instant averment

regarding the petitioner's default and stopped making payments was deceiving pleadings since the then-replaced servicing who was abruptly changed and then-replaced servicer refused to further accept the monthly payment, see exhibit 1. In addition, the opposing lawyer's averments that the purported 2011 MERS assignment was truthful because it was made by 'MERS vice president' and because it was recorded with the registry of deeds, (see copy of the relevant page of his motion to dismiss attached hereto as exhibit set 6) were false pleadings. First the purported 2011 MERS assignment was not made by 'MERS vice president' as the opposing lawyer averred in his motion to dismiss (see exhibit 6, page 10 of said motion), rather it says that it was made by a "authorized representative" of MERS without identifying the authorization of the purported assignor. However this was not so decisive because some courts turned the blind eye to such omission but other court did not see *Sullivan v. Kondaur Capital Corp.*, 85 Mass.App.Ct. 202, 211, 7 N.E.3d 1113, 2014 WL 1421917 (2014). The Appeals court wrote "[the Sullivan's second] *assignment is deficient because it does not demonstrate the authority of the individual who executed it on Saxon's behalf*". Moreover and the more relevant deceiving contention the opposing lawyer made in his motion to dismiss the 2015 removed action that the 2011 MERS purported assignment was truthful and valid because it was recorded with the registry of deeds. This averment was also misleading and inaccurate refuted by Massachusetts controlling law that provides otherwise. See *Bevilacqua v. Rodriguez*, 460 Mass. 762, 772 (2011). The SJC wrote:

"there is nothing magical in the act of recording an instrument with the registry that invests an otherwise meaningless document with legal effect.[] **Recording is not sufficient in and of itself, however, to render an invalid document legally significant.**" (emphasis added).

(also keep in mind what the First Circuit said regarding disingenuous recording of such mortgage assignments in *Wilson v. HSBC Mortgage Services, Inc.*, 744 F.3d 1, No. 13–1298, 2014 ( 1 St Cir). The court said: "*We said in Culhane [Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 289 (1st Cir.2013)] *that while this type of practice "can be disparaged on policy grounds, such policy judgments are for the legislature, not the courts"*).

62.     The opposing lawyer also made other false and misleading argument in his motion to dismiss the 2015 removed action. He argued that petitioner failed to plead the fraudulent conveyance of the 2011 purported MERS assignment, see the averment in page 9 of the motion to dismiss (attached as exhibit set 6). To the contrary petitioner/plaintiff pled with specificity that one of the fraudulent acts regarding the fabricated MERS assignment was that 2011 MERS assignment claimed to assign the note to PennyMac (see exhibit 3) when "*MERS never held the note*" as the First Circuit observed in *Culhane supra* 708 F.3d 282 @ 287 (2013): "*The upshot of [MERS] does not have any beneficial interest in the loan*". Attached hereto as exhibit set 7 are several relevant pages of the 2015 complaint that spelled out these unlawful and fraudulent conveyance of the note specifically regarding the devious 2011 MERS assignment and MERS claimed to "fraudulently" assigning the note to PennyMac, (see exhibit 3).

63.    This was not the only bias and arbitrary ruling rendered to dismiss the claim regarding the 2011 fraudulent assignment that claimed that was made by MERS in the 2015 removed action sustaining the opposing lawyer's deliberate misleading averments and frivolous motion to dismiss. Judge Talwani also reversed case law precedent regarding other claims.

64.    Judge Talwani also reversed case law precedent that a verbal agreement regarding the modified monthly payment was binding. This ruling also singled out petitioner for disparate treatment and reversed of controlling law precedent rendered by three district judges: Gorton, Stearns, Young and Magistrate Judge Bowler of this district court, all rendered otherwise. (*Akar v. Fed. Nat'l Mortg. Ass'n*, 845 F.Supp.2d 381, 397 (D.Mass. 2012): "[A]n oral modification which does not rewrite the contract, but merely alters the timing or mode of performance of the contract, is enforceable under Massachusetts law"; and continued stating: "[W]here '[t]he oral agreement merely changed the method by which the plaintiffs had undertaken to pay their mortgage indebtedness' but did not affect the mortgagee's 'right, title and interest' in the mortgage, the agreement was not unenforceable under the Statute of Frauds"). Judge Young also upheld same in *Aragao v. MERS and Fannie Mae*, 22 F. Supp. 3d 133, 13–12515-WGY, see footnote #6. Judge Stearns also made similar finding, see America's Growth Capital, LLC v. PFIP, LLC d/b/a PLANET FITNESS, CA# 12-12088-RGS, December 19, 2014. Magistrate Judge Bowler observed same in *HMC Assets, v. Conley*, CA#. 14-10321-MBB, dated 08/22/2016, 2016 WL 4443152 at *22). (emphasis added).

65.    Next, Judge Talwani also dismissed a claims of unfair and unconscionable practice under G.L.c. 106 § 2-302. The claim was dismissed rendering that said statute applies only to sale of goods and not to mortgage. The ruling was also a reverse of case law precedent rendered by at least 10 courts both state and federal rendered otherwise.

66.    Both state and federal Massachusetts courts have upheld the theory of unconscionability under G.L.c. 106 § 2-302 applied in mortgage and contract disputes. And here are some of these cases: In 1979, the Massachusetts Appeals Court upheld unconscionability in contract law, see *Covich v. Chambers*, 8 Mass.App.Ct. 740, 750 n. 13 (1979); In 1980, the SJC upheld the theory of unconscionability in *Zapatha v. Dairy Mart, Inc.*, 381 Mass. 284, 291, 408 N.E.2d 1370 (1980); In 1981 this district court upheld the theory of unconscionability in *Meehan v. New England School of Law*, 522 F.Supp. 484, 494 (D.Mass.1981, Judge Nelson); In 1981 Judge Zobel of this district court upheld same, see *Scheele v. Mobil Oil Corp.*, 510 F.Supp. 633, 637 (D.Mass.1981); In 1984 the SJC once again upheld the theory of unconscionability in *Bronstein v. Prudential Ins. Co.*, 390 Mass. 701, 708, 459 N.E.2d 772 (1984); In 1992 the SJC upheld the theory of unconscionability in contract case, see *Waters v. Min Ltd.*, 412 Mass. 64, 67, 587 N.E.2d 231 (1992); The SJC in 2013 also upheld the theory of unconscionability in a mortgage case, *Drakopoulos et al v. U.S. Bank National Association et al* 465 Mass. 775, 991 N.E.2d 1086, (2013) in that case the SJC cited the history of the theory of unconscionability that dated back centuries ago in England and here in this commonwealth, citing the following cases:

"*Banaghan v. Malaney,* 200 Mass. 46, 85 N.E. 839 (1908); *Boynton v. Hubbard,* 7 Mass. 112 (1810); *Kleinberg v. Ratett,* 252 N.Y. 236, 169 N.E. 289 (1929); *Campbell Soup Co. v. Wentz,* 172 F.2d 80 (3d Cir.1948); 14 S. Williston, Contracts § 1632 (3d ed. 1972)".

67.     It was not unexpected, but the First Circuit affirmed the dismissal of 2015 removed action in one sentence (attached is a copy of said ruling as exhibit 8) where the dismissals of the cited claims were a reversed of case law precedent was contrary to the principle of equal treatment to all under the law as mandated by the constitution and act of congress under 42 U.S.C. § 1981. The First Circuit affirming the district judge's ruling that plaintiff lacked the standing to challenge the MERS assignment of the note was contradictory to its own ruling rendered in *Culhane Supra* 708 F.3d 282 (2013). "*The upshot of [MERS] does not have any beneficial interest in the loan*". These ruling that reversed case law precedent shall not be sustained.

## ACTION 16-11982

## INTRODUCTION/BACKGROUND

68.     One of the primary bases of this action was the filing the Land Court action, the SCRA action on August 12, 2016 to foreclose on a discharged mortgage while the April 2015 removed action(s) were sitting dormant with no court activities, where the objective of the 2015 action (removed) was to determine the validity and fate of the subject mortgage that was discharged in 2011. There was a claim regarding the mentioned fabricated MERS assignment that asserted to grant the ownership of the mortgage and note to PennyMac initially, but the mortgage and note kept on transferring when petitioner contested the validity of such assignment. As consequence the mortgage and note were transferred back to PennyMac in 2017 and a week or so later was transferred to Wilmington Trust as trustee of MFRA Trust, this transfer will be discussed in the next segment regarding the other claims. Keep in mind that two entities each claimed ownership of subject mortgage after then-owner charged it off in 2011, see exhibits 2 and 3.

69.     Said action was also filed because sometime in July 2016 when the first two removed actions 15-12275 and 15-13611 were sitting dormant for more than a year in which the judge did not place it on the calendar. Needless to mention the detriments that the uncertainty and delays of resolving this controversy inflict upon the petitioner. Relevant also here is that petitioner was mindful of the judge of *Culhane v. Aurora Loan Servs. of Neb.,* 826 F.Supp.2d 352, (D.Mass. 2011) who wrote:

FN1: "[There] is a change in the very culture of the United States District Court. It is no longer a trial court in many parts of the country.[] it functions more like a state highway department. They will not try cases. **More fundamentally, they will not set the cases for trial because the parties will mediate this case, and if I do not set it for trial, eventually it will settle.** And settlement is a better reconciliation ..." (emphasis added).

70.    With these circumstances and observations in mind, and yet there were other tenets that triggered this controversy, that there is a statute, G.L.c. 244 § 35A, a law that was enacted to require a "good faith negotiation to avoid unnecessary foreclosures", see the heading of said statute. Petitioner did reach out to the opposing lawyer in July 2016 pursuant to said statute to discuss and perhaps explore way to conclude this controversy. Petitioner explained to the opposing lawyer how damaging the litigation has been, specifically the damaging effects and negative credit record of this controversy that was precluding petitioner of conducting business and move forward with a development project because of this litigation. Petitioner urged defendants' lawyer to consider some alternative and resolution to end this conflict as prescribed by said G.L.c. 244 § 35A.

71.    The opposing lawyer replied and claimed that petitioner should put such a proposition in writing and then the lawyer will forward it to his clients. Petitioner did.

72.    Without hearing any reply to said proposition of settlement, a week later, sometime in late July or early August 2016, the opposing lawyer's clients filed with the Land Court a SCRA action to foreclose while the removed actions (15-12275 and 15-13611) that were intended to resolve the validity of the ownership of the (void) mortgage and vindicate the fraudulent conveyance of the petitioner's property through this fake assignment that claimed was made by MERS.

73.    Therefore the filing of the SCRA with the Land Court while these removed actions were pending to determine the validity of the opposing lawyer's client(s)' claims of ownership of the subject mortgage, was a bad faith, unfair practice that 93A defines it unlawful. It entailed placing foreclosure publications in the imprint and electronic press; and record foreclosure documents in the registry of deeds slandering the title, and property's marketability and value that further hindered plaintiff's effort to obtain conventional business financing. In addition, the parties had contemplated discussions and possible resolution pursuant to G.L.c. 244 § 35A et seq as mentioned above, thus the opposing lawyer's clients' filing the SCRA action while the parties were engaging in means to explore resolution was further inappropriate and in bad faith. That triggered other claims and cause(s) of action leading to action 16-11982.

74.    Petitioner filed action 16-11982 and sought, among other things, to compel the debt collector to halt and dismiss the SCRA until the determination of the validity of the 2011 purported mortgage assignment; where also the removed actions 15-12275 and 15-13611 were intended to adjudge the validity of said purported MERS assignment that claimed to grant PennyMac and its successor such fake ownership of the subject mortgage and note. And keep in mind that then-servicer had identified the claimed owner of the discharged mortgage as SWDNSI Trust and its trustee as Citibank, see exhibit 2.

75.     In other words, the opposing lawyer's clients filed the SCRA action to foreclose when the removed action was intended to determine the validity of their purported ownership of the mortgage that was derived from the claimed MERS assignment that as illustrated above cannot be sustained by either fact or law.

76.     Note also that the Magistrate Judge issued her recommendation to dismiss the action (that devoid of any legal grounds as discussed herein) on August 31, 2016 where the debt collectors had filed the SCRA action in late July 2016, a month prior to the August 31st recommendation to dismiss the action. This was telling that staff of the district court had tipped off the opposing lawyer of the August 31, 2016 recommendation of dismissal of the removed actions 15-12275 and 15-13611. This is irrelevant but was troubling.

77.     Nevertheless, action 16-11982 was filed to halt and dismiss the SCRA action until resolving and determine the validity of the purported MERS assignment. Action 16-11982 also had pled other claims: unlawful placed insurance in violation of congress act, 12 U.S.C. §§ 2605 k(1)(A) and (m). Same was a violation of Massachusetts regulation, 209 CMR 18.21(3), which also provides that it is unlawful to "requiring the unnecessary forced placement of insurance, when adequate insurance has been in place.

78.     The action also had claims of unfair and deceptive practice actionable under 15 U.S.C. §§ 1692d and 1692f; claims to defy G.L.c. 244 § 35A et seq. To reiterate, G.L.c. 244 § 35A mandates discussion among the parties to explore ways to resolve controversial issues regarding the subject mortgage and related matters.

79.     As noted petitioner reached out to the opposing lawyer pursuant to said authority, G.L.c. 244 § 35A, its captioned prescribes "*good faith effort to negotiate for commercially reasonable alternative to foreclosure*". Petitioner submitted an offer of settlement to the opposing law the parties had discussed and as prescribed by said statutes, G.L.c. 244 § 35A. Instead of responding the proposition made pursuant to G.L.c. 244 § 35A, the opposing lawyer's clients filed the SCRA action after a week or so later after the parties had met. Petitioner asserted that such conducts were not only disingenuous, deceptive and unlawful conduct 93A but also contradicted the objective of G.L.c. 244 § 35A that also leads to 93A derivatively, see 940 CMR 3.16(3). The action had a claim under 15 U.S.C. § 1692e of making false statement that the opposing lawyer represented to petitioner to tender a proposed settlement, but yet immediately after tendering such proposition, the opposing lawyer's clients filed the SCRA action inflicting irreparable detriments upon petitioner. Such disingenuous conducts not only actionable under 93A but also under said 15 U.S.C. § 1692e that prohibits making false and deceiving representations. Note that the opposing lawyer later argued that his clients were not required or willing to comply with said G.L.c. 244 § 35A and G.L.c. 244 § 35B, because there was nothing written in the mortgage documents to require his clients to comply with said G.L.c. 244 § 35A et seq; he also argued frivolously that his clients were not required to act in good faith because there was nothing in the

mortgage paperwork that require acting in good faith, further discussion to follow). these arguments were grossly frivolous that Rule 11 and the controlling case law by the First Circuit and district court expressly forbid.

80.     There was also an injunctive relief sought in this action to enjoin the SCRA action since the objective of the proceeding was to determine the fate of the ownership of the subject mortgage. That is if the mortgage had been discharged, the mortgage would be void, as such, the SCRA action cannot be progressed. There were other claims that will be discussed below.

81.     The case was assigned to Judge Saris. Judge Saris set a hearing for the petitioner's motion for injunctive relief. The opposing lawyer (same lawyer since the onset of this litigation) transferred the case to Judge Talwani. She canceled the injunction hearing that Judge Saris had scheduled. The opposing lawyer then filed his typical motion to dismiss under Rule 12(b)(6) arguing that the claim regarding the SCRA filing should be dismissed making egregious arguments contending that the petitioner cannot seek claim for damage because the SCRA action is unrelated to foreclosure under G.L.c. 183 § 21; he also cited pointlessly the Matt case (*HSBC Bank USA, N.A. vs. MATT*, 464 Mass. 193, 981 N.E.2d 710, (Mass. 2013)). This was a gross frivolous argument in violation of Rule 11 that prohibits litigants to make frivolous arguments and specifically when the opposing lawyer's instant argument was previously rejected.

82.     Note that the opposing lawyer's argument(s) made in action 16-11982 to dismiss the claim arguing that since the SCRA action is unrelated to "power of sale" under G.L.c. 183 § 21, therefore the action should be dismissed and that plaintiff lacked the right to bring the instant claim, also made this identical frivolous argument in a case in which he represented Citibank v Najda, case# 14-cv-13593-GAO. In that case he represented Citibank. He ironically argued in that case that Citibank was the owner of the mortgage and not PennyMac in scenarios that were identical to this instance but in reversed script where each of Citibank and PennyMac claimed ownership of that mortgage through same fabricated mortgage assignment(s). (That case was an illustration of the constant fraudulent mortgage assignments in this industry under the name of MERS). Nevertheless, the opposing lawyer made the same pathetic argument in the Najda's case that SCRA action has nothing to do with foreclosure process under G.L.c. 183 § 21 and therefore it should be dismissed citing also pointlessly the case of *HSBC Bank USA, N.A. vs. MATT*, 464 Mass. 193, 981 N.E.2d 710, (Mass. 2013). The Najda's court, Judge O'Toole, a seasoned judge, rejected this absurd argument and denied to dismiss that claim, and wrote, see FN7:

*"While servicemember proceedings are not technically part of foreclosure actions, see Matt, 981 N.E.2d at 715–16, at the motion to dismiss stage, the Najdas adequately allege that **such an action is understood to be part of the foreclosure process** in Massachusetts **and that understanding damaged their property's marketability"** (emphasis added).*

83.     In other words as Judge O'Toole observed in the Najda's case and relevant to this argument, that the filing of SCRA did indeed result in damages and specifically the marketability of the property, and slandering the title of the property and its owner regardless what relation such a conduct has to the foreclosure process under G.L.c.183 § 21.

84.     It should also be noted that the opposing lawyer's argument was frivolous under Rule 11 when it is "either not well-grounded in fact or unwarranted by existing law. See *Cruz v. Savage*, 896 F.2d 626, 632 (1st Cir. 1990). The district court also made similar findings regarding pleadings requirements under Rule 11. Rule 11 requires [the opposing lawyer] to '**stop and think**' before making and submitting pleadings; or "*for insisting upon a position after it is no longer tenable*". The Rule "*also, emphasizes the duty of candor by subjecting litigants to potential sanctions*". These were quotations excerpted from Judge Stearns' article in *McCarty v. Verizon New England, Inc.*, # 1:09-cv-10991-RGS Doc# 37, dated 03/25/11  (emphasis added).

**85.**     The date of Judge O'Toole's ruling in the case of Citibank v. Najda, case# 14-cv-13593-GAO, 2016 WL 158502 was January 2016. Therefore, the opposing lawyer who made the argument that Judge O'Toole rejected in January 2016, was obligated under Rule 11 not to make this frivolous argument that he made almost a year later that was rejected by a very seasoned Judge O'Toole. Therefore under what the First Circuit rendered in *Cruz* and *Salois supra*, and Judge Stearns's memorandum regarding compliance with Rule 11 in *McCarty*, the opposing lawyer was prohibited to make this deceiving argument that was previously rejected by this court, and therefore he should be sanctioned for making such ludicrous arguments.

**86.**     Nonetheless, the filing of the SCRA action did indeed cause petitioner damages in term of marketability of the property and slandering the property's title and its owner. And to argue that no relief can be granted was an error of law and logic and the opposing lawyer should be sanctioned for making such frivolous pleadings and averments. Judge Talwani's sustaining this frivolous argument was also unreasonable.

87.     To reiterate the bases that the petitioner reached out to opposing lawyer in July 2016 were as observed by Judge Young in Culhane, Footnote 1, that federal judges "*will not set the cases for trial because the parties will mediate this case*"; also as noted petitioner reached out to opposing lawyer in July 2016 pursuant to G.L.c. 244, § 35A that mandates good faith negotiation to avoid unnecessary controversies while the removed actions 15-13611 and 15-12275 were pending to determine the validity and fate of the subject mortgage. Instead the opposing lawyer's clients filed the SCRA action to foreclose on void mortgage which was also a violation of 15 U.S.C. § 1692f6 and 93A, and also was in violation of Title 209 of Commonwealth of Massachusetts regulations 209 CMR 21A(d) "*Knowingly or recklessly facilitating the illegal foreclosure of real property collateral*"

88.     As noted the opposing lawyer removed the action from Judge Saris' session to Judge Talwani and filed the typical frivolous motion to dismiss that contained nothing but meritless factual and legal arguments that as illustrated cannot be sustained by logic or facts.

89.     He further deceived Judge Talwani arguing that his clients were not required to comply with G.L.c. 244, § 35A and G.L.c. 244, § 35B, and he cited frivolous case law of *MacKenzie v. Flagstar Bank, FSB*, 738 F. 3d 486 (1st Cir. 2013), averring to the court that this case illustrates that his clients did not have to comply with G.L.c. 244 § 35A and G.L.c. 244 § 35B was fraud on the court and frivolous averments that Rule 11 prohibits. To the contrary, the *MacKenzie* citation was made to deceive Judge Talwani to parrot such frivolous argument citing inapposite case law because the *MacKenzie* case entailed claim of a borrower who sought to compel the servicer to modify the mortgage under HAMP modification, and not like in this instance where the petitioner's cause of action was the defiance to comply with G.L.c. 244 §§ 35A and 35B.

90.     The First Circuit was correct to deny MacKenzie's claim because most courts that reviewed claims under HAMP had determined that HAMP did not provide cause of action for refusing to afford loan modification under HAMP. On the other hand, in this instance was that Fay Servicing and Wilmington Trust moved to accelerate and foreclose on the subject (void) mortgage without compliance with G.L.c. 244 § 35A and G.L.c. 244 § 35B.

91.     G.L.c. 244 § 35A(b) provides that: *"The mortgagee, or anyone holding thereunder, shall not accelerate maturity of the unpaid balance of such mortgage obligation or otherwise enforce the mortgage because of a default consisting of the mortgagor's failure to make any such payment in subsection (a) by any method authorized by this chapter or any other law [unless] **a written notice is given by the mortgagee to the mortgagor**."* (emphasis and underline added).

92.     Note that neither Wilmington Trust nor Fay Servicing complied with these statutory requirements under G.L.c. 244 § 35A and G.L.c. 244 § 35B. They moved to foreclose on a void mortgage and without complying with these statutes that forced petitioner into bankruptcy inflicting grave irreparable harms upon petitioner. Such defiance to comply with G.L.c. 244 § 35A and G.L.c. 244 § 35B constituted deceptive and unlawful practice under 93A that entitled petitioner to relief for his damages under 93A. To argue otherwise was unreasonable, bias and unconstitutional.

93.     In light of the cited grounds, the opposing lawyer's motion to dismiss claims under G.L.c. 244 § 35A and G.L.c. 244 § 35B and deceived the freshman district judge with such false citation, *MacKenzie*, was fraud on court and violated the legal practice as defined by Fed. Rule Civ.P. 11(b), and as instructed by the First Circuit in *Cruz v. Savage supra, Salois v. Dime Sav. Bank of N.Y supra* and by the district court in *McCarty supra* and should be vacated.

94.     Judge Stearns wrote in *McCarty supra* that the opposing lawyer was required that his pleadings and averments tendered to the court must be truthful and that the lawyer has "*conduct[ed] a reasonable inquiry and determined that any papers filed with the court [were] well grounded in fact, legally tenable, and 'not interposed for any improper purpose.' **An attorney who signs the paper without such a substantiated belief 'shall' be penalized by 'an appropriate sanction.'*** (emphasis added).

95.     1udge Talwani dismissed action 16-11982, allowing the opposing lawyer's frivolous arguments as noted above, (like arguing that since the mortgage papers contained no such requirement, his clients did not have to comply with Massachusetts General Law, G.L.c. 244, § 35A et seq, or to comply with 209 CMR 21A(c) which defines it unlawful for: "*Failing to comply with the provisions of M.G.L. c. 244, §§ 35A, 35B or 35C regarding the right to cure a mortgage loan default and other requirements.;* the opposing lawyer also argued that his clients did not have to act in good faith because there was nothing written in the mortgage papers to require acting in good faith; he frivolously argued that petitioner cannot see claim for the filing the SCRA action because it was not related to "power of sale" where such ludicrous argument was rejected by Judge O'Toole when the opposing lawyer made it in the Najda, c# 14-cv-13593-GAO, 2016 WL 158502, see Footnote 7 in which Judge O'Toole rejected this absurd argument).

96.     Judge Talwani also allowed the opposing lawyer's arguments that under res judicata the claim of the 2011 fraudulent conveyance of the mortgage which petitioner made in action 16-11982 should be dismissed. Where absent of resolving this contention and the validity of the MERS assignment, the foreclosure cannot lawfully take place specifically when the mortgage had been discharged in 2011 and claimed loss, thus was void under Massachusetts law, "*If the obligation underlying the mortgage has been[]otherwise discharged, the mortgagor may maintain a suit to compel the cancellation of the note and a discharge of the mortgage*". *Beaton supra*, 367 Mass. 385 @ 392, 326 N.E.2d 302, (1975).

97.     Judge Talwani also dismissed this claim adopting the opposing lawyer's deceiving argument that res judicata precluded said claim. However the res judicata argument was inapplicable because: action 15-12275 and 15-13611 were pending and yet she dismissed the claim regarding the validity of the 2011 devious assignments the mortgage and note adopting the opposing lawyer's argument that homeowner lacked standing to challenge the validity of said assignments on November 23, 2016, see said ruling as exhibit 5.

98.     Judge Talwani also dismissed the claim regarding the claim of default and the issues regarding the correct amount of the monthly payments which were also among the issues of this controversy that were brought in action 16-11982. She adopted the opposing the lawyer's argument of res judicata that these claims should have been brought in action 15-12275/15-13611 cited res judicata. To the contrary the main objective of these actions was mostly to vindicate the validity of the fraudulent conveyance of the subject mortgage and note through the

fabricated 2011 MERS assignment that cannot be sustained as a matter of law or fact as illustrated above.

99.     Put it simply should the opposing lawyer's clients have any evidence that illustrates that the mortgage had not been discharged in 2011, the opposing lawyer and his clients would have presented it as opposed to argue endlessly that petitioner/homeowner lacked standing to vindicate this very issue. Notwithstanding, the opposing lawyer's instant argument was another false pleadings prohibited by Rule 11 since apposite case law provides otherwise as noted above.

100.    The short of it is that the validity of mortgage conveyance was not adjudged, heard or determined in the 2015 removed actions or in action 16-11982.

101.    The opposing lawyer's arguments that his client did not have to comply with G.L.c. 244 § 35A and G.L.c. 244 § 35B that also mandate "good faith" conducts and discussions among the parties to avoid this controversy was bizarre and contrary to case law and these statutory requirements under G.L.c. 244 § 35A and G.L.c. 244 § 35B and also under Title 209 CMR 18.21A(3). He constantly deceived Judge Talwani with such frivolous arguments like that there was nothing written in the mortgage papers that requires him or his clients to act in good faith. Judge Talwani adopted the argument and dismissed the petitioner's claims that such conducts of unfair practice violated 93A that declares unfair and deceptive practice as unlawful.

102.    And yet again not only that Judge Talwani parroted these frivolous arguments and dismissed the action, but again the First Circuit rubberstamped the dismissal of action 16-11982, Judge Howard and Barron were on the panel.

103.    It is imperative to emphasize that validity of the 2011 MERS assignment the mortgage and note was not adjudged or heard in any action which is relevant regarding the 2018 action.

**THE 2018 REMOVED ACTION 18-11534 AND ACTION 18-11873**

104.    Now the bases of the 2018 removed action, which the opposing lawyer demanded that petitioner be sanctioned, were as follows. The action invoked mainly a tenet known as paragraph 22, an authority that was available to be invoked when petitioner was served on May 31, 2018 the so-called notice of default under said paragraph 22. This tenet, paragraph 22, grants such standing to vindicate the issues specifically the fate of the subject mortgage. Standing under paragraph 22 to vindicate the validity of a devious mortgage conveyance dated 2011 was granted as a matter of law affirmed by various courts, (see *Pinti v Emigrant Mortgage Co.* 472 Mass 226, 33 N.E. 3d 1213 (2015); *Federal Natl. Mort. Assn. v. Marroquin*, 477 Mass. 82 (2017) among many other cases).

105.    Petitioner invoked said paragraph 22 and brought an action in the Land Court action 18 MISC 000319 among other thing to vindicate the validity of the subject mortgage that had been discharged in 2011 that had been null. There were other claims specifically to determine what could be lawfully owned if the mortgage had not been void; and there were claims for the willful defiance to comply with G.L.c. 244 § 35A and G.L.c. 244 § 35B. There was one federal claim in which would make the servicing transfer to Fay Servicing in September 2017 invalid for certain statutory noncompliance with 12 U.S.C. § 2605(b)(2) that require that the consumer is provided with 15 days statutory notice of the servicing transfer.

106.    Once again the opposing lawyer removed said Land Court action and followed with his typical frivolous motion to dismiss playing the same mantra of res judicata, and as noted he also filed a motion to sanction petitioner for seeking to adjudge this controversy under paragraph 22.

107.    To reiterate, the opposing lawyer's motion to dismiss citing res judicata as ground to dismiss the 2018 removed action was fraud on the court; likewise the motion to sanction petitioner for invoking said paragraph 22 to adjudge this controversy where previously the opposing lawyer's argument (where Judge Talwani adopted) that homeowner lacked standing to challenge the validity of the mortgage assignment; whereas in this instance standing was provided by paragraph 22 as affirmed by various court cases: *Federal Natl. Mort. Assn. v. Marroquin*, 477 Mass. 82 (2017), citing *Pinti v Emigrant Mortgage Co.* 472 Mass 226, 33 N.E. 3d 1213 (2015): *"the right of the mortgagor to bring a court action to present any defense to foreclosure and default"*.

108.    One of the main claims was regarding the validity of the (void) mortgage and the purported 2011 MERS assignment; and the contention of default; that is whether then-replaced servicer's refusal to accept the payment (see exhibit 1) constituted default. Regardless, paragraph 22 provides forum to *"present defense to default"*. And even if there is a default, and even if the mortgage still valid and debt had been discharged, Massachusetts law mandates cure of default under G.L.c. 244 § 35A and G.L.c. 244 § 35B, see Judge Saylor memorandum dated June 12, 2014 in *Stokes v. Wells Fargo* 13-13137-FDS. Lastly and even if the default had not been discharged, the amount of the alleged debt must be adjudged.

109.    Therefore the opposing lawyer's argument to dismiss the claim regarding the validity of the 2011 mortgage assignment citing res judicata was frivolous since there 2015 dismissal was a dismissal adopting the opposing lawyer's argument that homeowner lacked standing to challenge the validity of the assignment of the note and mortgage did not adjudge the merits of the issues or even heard where the purported assignment was clearly the product of fabrication, that controlling case law did not find such devious assignment to be valid as discussed above. In this instance, the 2018 removed action, standing was granted under said paragraph 22, see *Pinti, Marroquin supra*.

110.    Therefore the opposing lawyer's motion to dismiss citing res judicata was once again utterly frivolous that warranted sanction under Rule 11, and the instruction of the First Circuit (see *Salois v. Dime Sav. Bank of N.Y.*, 128 F.3d 20, 28 (1st Cir.1997) ); and under the instruction of the district court (see *McCarty v. Verizon New England, Inc.*, Case 1:09-cv-10991-RGS Doc# 37, 03/25/11. Judge Stearns).

111.    That said and likewise, the opposing lawyer's motion for sanction was equally frivolous because the res judicata argument was not applicable to dismissal for lack of standing where the merits of the issues were never adjudged or heard. Furthermore, there were other causes of action in the 2018 removed action, claims under G.L.c. 244 § 35A and G.L.c. 244 § 35B, and RESPA 12 U.S.C. § 2605(b)(2). Therefore the motion for sanction was further unreasonable, frivolous and sanctionable under Rule 11 and controlling precedent of this circuit, see *Salois v. Dime Sav. Bank of N.Y.*, 128 F.3d 20, 28 (1st Cir.1997) ); and under the instruction of the district court (see *McCarty v. Verizon New England, Inc.*, Case 1:09-cv-10991-RGS Doc# 37, 03/25/11. Judge Stearns).

**THE OPPOSING ARGUMENTS THAT GAVE RISE TO RULE 11 VIOLATIONS:**

**(1) THE ARGUMENT TO DISMISS THE CLAIM REGARDING THE VALIDITY OF THE 2011 MERS ASSIGNMENT CITING RES JUDICATA WAS FRIVOLOUS/ YET JUDGE TALWANI'S SUSTAINED AND DISMISSED THE CLAIM-THIS WAS UNCONSTITUTIONAL AND CONTRADICTORY TO CASE LAW PRECEDENT**

112.    First and regarding the validity of the 2011 devious MERS assignment the note and mortgage. As noted above the purported MERS assignment that claimed to assign the mortgage and note on behalf of nonexistent entity cannot be rendered valid by any reasonable minded jury for the reasons outlined above. As noted above, case law that addressed similar circumstances where the purported assignment claimed to assign the note and mortgage on behalf of nonexistent entities rejected to find such assignment valid, see *In re LOPEZ et al v. Mortgage Electronic Registration Systems, Inc.et al*, supra; *In re Bailey v. Wells Fargo, supra* (see footnote 16). These cases rejected the arguments that homeowner lacks the right to challenge the validity of such fabricated mortgage assignments. And regarding the assignment of the note by MERS, also courts expressed reservation regarding such validity of assignments of mortgage notes effectuated by MERS. The 2011 purported MERS assignment claimed to also grant the note to PennyMac which was another telling that the assignment was a deceit since MERS never had any ownership of the note, see copy of the MERS purported assignment, exhibit 3. Quoting again the First Circuit's remark on this issue: *"it is plain, however, that MERS never held the note"*. See footnote 8, *Culhane v. Aurora Loan Servs. of Nebraska*, 708 F.3d 282 (2013). *"The upshot of [MERS] does not have any beneficial interest in the loan"*, 708 F.3d @287. See also the Land Court's similar observation in *Schaefer-Ung v. U.S. Bank et al* 12 MISC 469684 in which the court (Judge Foster, June 10, 2014) questioned MERS assignments to assign the note.

113.     Keep in mind that two entities each claimed ownership of the subject mortgage, Citibank as trustee of a purported trust, see exhibit 2, and PennyMac also claimed ownership of it by fabricating the purported 2011 MERS assignment, (exhibit 3).

114.     Therefore the opposing lawyer's argument that cause of action regarding the validity of the devious MERS assignment should be dismissed under res judicata ground was frivolous since the merits of the assignment were not adjudged or even heard. Therefore such argument was in violation of Rule 11 as affirmed by case law, *Salois, supra* (1 st Cir), *McCarty v. Verizon New England, Inc., supra. District court,* Judge Stearns) regarding pleadings and that *Rule 11 calls for the imposition of sanctions on a party "for making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an 'improper purpose.'"* (1 St Cir).

**(2)  THE OPPOSING LAWYER'S RES JUDICATA ARGUMENTS WERE FRIVOLOUS AND FRAUD ON THE COURT- YET JUDGE TALWANI'S SUSTAINED THE ARGUMENT AND DISMISSED THE CLAIM WAS UNCONSTITUTIONAL AND CONTRADICTORY TO CASE LAW PRECEDENT**

115.     Both Massachusetts law under the state and federal controlling law regarding the issue of preclusion and res judicata are in consensus. The application of res judicata **mandates to have judgment on the merits** (emphasis added). These false averments of the opposing lawyer that had employed throughout this long controversy was the reason that the merits of the issues had not yet adjudged or even heard.

**THE STATE CONTROLLING PRECEDENT**

116.     The Massachusetts Appeals Court and the SJC addressed in great depth the application of res judicata. In *Sarvis v. Boston Safe Deposit and Trust Co.*, 47 Mass.App.Ct. 86, 711 N.E.2d 911 (1999), the court addressed the applicability of res judicata. The Appeals Court found that "The term "res judicata" includes both <u>claim preclusion</u> and <u>issue preclusion</u>" citing *Heacock v. Heacock*, 402 Mass. 21, 23 n. 2, 520 N.E.2d 151 (1988), @ 711 N.E.2d 922, (emphasis added).

I.     *Issue Preclusion*

117.     Start first with ***Issue Preclusion***. The court wrote regarding 'Issue Preclusion' that "[t]he doctrine of issue preclusion "prevents relitigation of **an issue determined in an earlier action** where the same issue arises in a later action, based on a different claim, between the same parties or their privies." Id. at 23 n. 2, 520 N.E.2d 151. **It requires proof that** "(1) <u>there was a final judgment on the merits in the prior adjudication</u>; (2) the party against whom estoppel is asserted was a party (or in privity with a party) to the prior adjudication; and (3) <u>the issue in the prior adjudication is identical to the issue in the current adjudication</u>.[]"

118.    **Prong one** was inapplicable since the 2015 action was dismissed allowing the opposing lawyer's contention that plaintiff lacked the standing to vindicate the validity of the purported 2011 mortgage assignment under the name of MERS, as such the merits of this claim were never adjudicated. Although the opposing lawyer's averments in the motion to dismiss the 2015 removed action that plaintiff lacked the standing to vindicate the validity of the 2011 devious MERS assignment because he argued that said purported 2011 purported MERS assignment was recorded, was willfully false[FN2] and subjecting the opposing lawyer to sanction for tendering such false averments, nevertheless the merits of the purported 2011 MERS assignment were not adjudged in the 2015 removed action, and that *"there was [no] final judgment on the merits in the prior [2015 removed action] adjudication"*, *Sarvis* @ 711 N.E.2d 922; *Heacock v. Heacock, supra*. Therefore Prong one was inapplicable because the merits regarding the validity of the purported 2011 MERS assignment of the (void) mortgage was not adjudged in the 2015 removed action.

FN2: The notion that a fabricated assignment of mortgage would be deemed valid simply because it was recorded was rejected by the SJC in its ruling in *Bevilacqua v. Rodriguez*, 460 Mass. 762, 772 (2011). The SJC wrote:

"there is nothing magical in the act of recording an instrument with the registry that invests an otherwise meaningless document with legal effect. See *S & H Petroleum Corp. v. Register of Deeds for the County of Bristol*, 46 Mass.App.Ct. 535, 537, 707 N.E.2d 843 (1999) ("The function of a registry of deeds is to record documents. It is essentially a ministerial function ..."). Recording may be necessary to place the world on notice of certain transactions. See, e.g., G.L. c. 183, § 4 (leases and deed); G.L. c. 203, §§ 2 – 3 (trust documents). **Recording is not sufficient in and of itself, however, to render an invalid document legally significant.** See *Arnold v. Reed*, 162 Mass. 438, 440, 38 N.E. 1132 (1894); *Nickerson v. Loud*, 115 Mass. 94, 97–98 (1874)" (emphasis added).

(also keep in mind what the First Circuit said to ridicule the notion that evasive recording of dubious mortgage assignments could be deemed valid just because they were recorded was illogical policy faulting the legislator for such absurdity. See *Wilson v. HSBC Mortgage Services, Inc.*, 744 F.3d 1, No. 13–1298, 2014 ( 1 St Cir): *"We said in Culhane [Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 289 (1st Cir.2013)] that while this type of practice "can be disparaged on policy grounds, such policy judgments are for the legislature, not the courts")*.

119.    **Prong Three** also was inapplicable regarding claims of compliance with G.L.c. 244 § 35A and G.L.c. 244 § 35B because "**the issue in the prior adjudication [regarding opposing lawyer's clients' defiance to comply with G.L.c. 244 § 35A was not] identical to the issue in the [2018] current adjudication**" . In this iteration of the 2018 removed action, the latest claimed assignees of the subject mortgage, Wilmington Trust and Fay Servicing, moved in 2018, 2019 and now to foreclose without complying with G.L.c. 244 § 35A and G.L.c. 244 § 35B. That was unlawful practice under 93A and the subject cause of action in the 2018 removed action, the willful defiance to comply with said G.L.c. 244 § 35A and G.L.c. 244 § 35B that also would

have made the foreclosure invalid under *Schumacher U.S. Bank v. Schumacher*, 467 Mass. 421, 5 N.E.3d 882 (2014); *Bank of New York Mellon Corp. v. Wain*, 85 Mass.App.Ct. 498, 11 N.E.3d 633, 636, (Mass. App. Ct. 2014) citing the mandatory compliance with said § 35A.

120.    The claims regarding defiance to comply with statutory requirements set forth by G.L.c. 244 § 35A and G.L.c. 244 § 35B were not pled, or could have been pled, in any action prior to the 2018 removed action 18MISC000319(MDV). The cause of action under G.L.c. 244 § 35A and G.L.c. 244 § 35B that the latest claimed owner of subject mortgage, Wilmington Trust, and the servicer Fay Servicing, purportedly assumed their interest in the subject mortgage in September 2017, and moved to foreclose in 2018 defying to comply with G.L.c. 244 § 35A et seq, therefore the instant cause of action could not have brought in prior action. The opposing lawyer's motion to dismiss the instant claim of compliance with G.L.c. 244 § 35A et seq, citing res judicata and also cited inapposite case law of MacKenzie were frivolous pleadings actionable under Rule 11. But yet again Judge Talwani's sustained this frivolous argument and dismissed the claim, and this was unconstitutional and contradictory to case law precedent

121.    As noted above, G.L.c. 244 § 35A(b) mandates that: *"The "mortgagee"[ i.e. the claimed owner of the subject mortgage], or anyone holding thereunder, **shall not accelerate** maturity of the unpaid balance of such mortgage obligation or otherwise enforce the mortgage because of a default consisting of the mortgagor's failure to make any such payment (a) by any method authorized by this chapter or any other law until [] a written notice [of the right to cure as mandated by G.L.c. 244 § 35A and G.L.c. 244 § 35B] is **given by the mortgagee to** the **mortgagor"**.* (emphasis and underlined added).

122.    Therefore the instant claims of defying to comply with G.L.c. 244 § 35A and G.L.c. 244 § 35B could not have been pled prior to action 18MISC000319; the opposing lawyer's averments and motion to dismiss citing res judicata were fraud on the court and in violation of Rule 11.

### II.    *Claim Preclusion*

123.    *Claim Preclusion*: Case law instructs that: " "The doctrine of *claim preclusion* makes a valid, final judgment conclusive on the parties and their privies, and bars further litigation of all matters that **were or should have been adjudicated** in the action... The doctrine is a ramification of the policy considerations that underlie the rule against splitting a cause of action, and is 'based on the idea that the party to be precluded has had the incentive and opportunity to litigate the matter fully in the first lawsuit.' " Id. [*Heacock v. Heacock supra*] at 23-24, 520 N.E.2d 151 (citation omitted)". (emphasis/ underline added).

124.    The short of it is that res judicata argument was not applicable to employ it as grounds to dismiss the 2018 removed action because the dismissal regarding the validity of the purported 2011 MERS assignment was dismissed in the 2015 removed action citing lack of standing that

did not adjudge the merits of the instant claim, as such, said dismissal did not adjudge the merits of the controversy was a dismissal without prejudice. And regarding the argument that the claim alleging that the purported 2011 MERS assignment was the product of fraud and fabrication and had no validity should have been pled in the 2015, it did, see copy of the 2015 complaint, some relevant pages are attached as exhibit set 7. However the opposing lawyer argued that plaintiff lacked standing, and Judge Talwani sustained. Therefore the instant claims were pled but were dismissed citing lack of standing, and the merits were not heard or adjudged.

125.    On the other hand the 2018 action invoked paragraph 22 as the authority that granted standing to vindicate the validity of the 2011 purported MERS assignment at last. The opposing lawyer's motion to dismiss this cause of action citing res judicata was fraud on the court and in violation of Rule 11 when the merits of this controversy were never adjudicated. And Judge Talwani's sustaining the argument and dismissed the claim was bias, unreasonable and unconstitutional.

126.    The opposing lawyer's argument gave rise to reprimand under Rule 11. Under the First Circuit's instruction in *Salois v. Dime Sav. Bank of N.Y.*, 128 F.3d 20,28 (1st Cir.1997): **"Rule 11 calls for the imposition of sanctions on a party "for making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an 'improper purpose.'"** (emphasis added). A court of law and reason shall sanction such chronic disingenuous legal practice that the opposing lawyer employed brazenly in each and every pleading or motion he ever tendered.

127.    The sum of it the opposing lawyer's motion to dismiss citing res judicata was frivolous and fraud on the court averments that "Rule 11 calls for the imposition of sanctions on a party for making [such frivolous] arguments". The opposing lawyer's motion to dismiss the 2018 removed action should have denied let alone justified sanction. Consequently the opposing lawyer's motion to sanction petitioner for seeking to vindicate the fraudulent assignment of the subject mortgage was simply beyond belief that Judge Talwani would also blindly sustain. This was unreasonable judicial operation and was indeed unconstitutional. The opposing lawyer's motion to sanction petitioner for seeking his due process of law is something that would only occur in some barbaric places and at all in this nation of law. This controversy and the legal practice of the opposing lawyer said it all regarding the concerns that Chief Justice Roberts had cited in his annual assessment of the court that he delivered on December 31, 2021.

## *THE ISSUE OF RES JUDICATA UNDER THE FEDERAL CONTROLLING LAW*

128.    The federal controlling law regarding res judicata is identical to the state law. The district court, Judge Woodlock, addressed the issue of res judicata and preclusion in *Okoye v. Bank of New York Mellon*,10–11563–DPW, July 28, 2011, 2011WL3269686 (D. Mass. 2011). He wrote, @ page 13 that: *"In order for claim preclusion to attach under the doctrine of res judicata, there*

must be *"(1) a final judgment on the merits in an earlier action*; (2) an identity of the causes of action in both the earlier and later suits; and (3) an identity of parties or privies in the two suits." Kale v. Combined Ins. Co., 924 F.2d 1161, 1165 (1st Cir.1991) (citations omitted)".

129.    Judge Woodlock further wrote: "**Res judicata is inapplicable here because there is no "final judgment on the merits in an earlier action**." Id. (emphasis added)" (emphasis added).

130.    See also *Hermes Automation Technology, Inc. v. Hyundai Electronics Industr.*, 915 F.2d 739, 750 (1st Cir. 1990). "Once there has been an adjudication on the merits, federal law stipulates that all claims which are 'part of the same cause of action' are extinguished, whether or not actually asserted in the original action." *Kale v. Combined Ins. Co. of Am.*, 924 F.2d 1161, 1164-65 (1st Cir. 1991).

131.    Note and warranted to note as follows regarding the very issue. The preclusive effect of a state court judgment is governed by state law, and the preclusive effect of a federal court judgment is governed by federal law. *See Cohen v. Shea*, 788 F. Supp. 66 (D. Mass. 1992). However, **the conditions for application of the doctrine are essentially the same**. There must be "(1) **a final judgment on the merits in an earlier suit,** (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two suits." *In re Iannochino*, 242 F.3d 36, 43 (1st Cir. 2001) (quoting *Mass. Sch. of Law, Inc. v. American Bar Ass'n*, 142 F.3d 26, 37 (1st Cir. 1998)); *see Kobrin v. Bd. of Registration in Med.*, 444 Mass. 837, 843 (2005). (emphasis added).

132.    It is also worthy to cite a removed case helpful to this inquiry. The district court dismissed an action for lack of standing and specified that such dismissal for lack of standing was a dismissal without prejudice because the obvious reasons, the merits of the issues were not adjudged. See *Lemelson v U.S. Bank Nat'l Assoc.*, No. 12-10677-PBS, 2012 WL 4527527, *4 (D. Mass Sept. 28, 2012). Judge Saris wrote:

"Magistrate Judge Collings determined that Lemelson lacked standing in federal court to bring a quiet title action, and recommended that I remand the case to state court pursuant to 28 U.S.C. § 1447(c). See Lemelson v. U.S. Bank Nat'l Ass'n, No. 11-cv-12050-PBS, Doc. 16 at 9 (D. Mass. Mar. 7, 2012)"

Judge Saris concluded the ruling stating that "the dismissal was without prejudice to challenging the foreclosure in **state court.**" (emphasis added to stress that the dismissal of claims that have exclusive jurisdiction of the state court is a dismissal without prejudice in removals and shall be adjudged in the state court).

133.    (Keep in mind that the district court lacked jurisdiction to dismiss and enter sanction under the First Circuit in *Mills v Harmon Law Offices, P.C. et al supra*s as discussed above)

**(3)** ***MOTION TO DISMISS CAUSE OF ACTION REGARDING ANY AMOUNT OWED UNDER RES JUDICATA WAS FRIVOLOUS-YET*** **JUDGE TALWANI'S SUSTAINING THE FRIVOLOUS ARGUMENT AND DISMISSED THE CLAIM WAS BIAS AND UNCONSTITUTIONAL**

134.    There was a cause of action in the 2018 removed action regarding any amount allegedly owed assuming that the mortgage had not been void.

135.    The opposing lawyer filed a motion to dismiss arguing that this cause of action should be dismissed under res judicata citing the prior action, the 2015 removed action. The argument was frivolous because the amount of debt changes daily. Thus, the motion to dismiss was another pleading that Rule 11 prohibits. Moreover the notice of debt provided in September 2017 as mandated under 15 U.S.C.§ 1692g contradicted the amount of debt cited in May 2018 notice.

136.    Homeowner consumer shall be entitled under reason, status quo and law to a standing to adjudge the amount of any alleged debt. To deny petitioner such forum which was provided by Massachusetts legislator intent under G.L.c. 244 § 35A(c)(4), and under act of congress under 15 U.S.C. § 1692g and yet allowing the opposing lawyer's frivolous motion to dismiss denying petitioner such standing to determine what could be lawfully owed was another episode contradictory to the principle of due process guaranteed by the constitution.

137.    It was indeed unprecedented to deprive someone of his day in court to adjudge the validity of an alleged debt. But yet again Judge Talwani sustained the opposing lawyer's motion to dismiss citing that the opposing lawyer provided an affidavit of the amount owed that his clients demanded and dismissed this claim. The dismissal was another deprivation of due process of law to deny plaintiff a forum to adjudge this contention. (attached is a copy of the May 13, 2019 ruling as exhibit set B, see Footnote # 10, pages 13-14

138.    This ruling goes to the heart of the instant concerns that Judge Talwani has chronically adopted the opposing lawyer's frivolous pleadings that lacked any substance of fact or law and denied petitioner due process of law to adjudicate this controversy. The instant ruling was indeed unreasonable and beyond belief that would take place in this nation of law, and yet to also sanction someone for seeking to have his day in court is the type of justice that exist in some barbaric places and not in this nation of law.

139.    Civilized society shall not be subjected to this injustice. This was again another episode that further erodes the public's confidence in the federal courts, the concerns that Chief Judge Roberts noted in his "2021 Year-End Report on the Federal Judiciary" expressing concerns of *"public's confidence"* in the federal courts. Nevertheless, the deprivation of due process to the citizens of the district of Massachusetts in these removed actions was unconstitutional and shall

be vacated specifically the sanction order specifically when the district court lacked jurisdiction to dismiss the 2018 removed action and consequently Judge Talwani lacked jurisdiction to issue the sanction dated May 13, 2019 in the 2018 removed action.

***(4) THE OPPOSING LAWYER'S MOTION TO DISMISS THE 2018 REMOVED ACTION CITING THAT THE OBJECTIVE OF PARAGRAPH 22 WAS FOR NOTIFICATION ONLY WAS FRAUD ON THE COURT-YET THE MOTIONS TO DISMISSED AND SANCTION WERE ALLOWED AND THIS* WAS UNREASONABLE AND UNCONSTITUTIONAL**

140.    As noted above and to reiterate, the outcome of the 2015 removed action was a dismissal of lack of standing adopting the deceiving averments of the opposing lawyer that the homeowner lacks standing to vindicate the bogus assignment of his mortgage, the 2011 purported MERS assignment. As such the merits of the validity of said MERS assignment were never adjudicated.

141.    That said, and when petitioner was served with the so-called notice of default under paragraph 22 dated May 31, 2018, where one of the objective of said paragraph 22 as it prescribes is to grant a standing for *"the right of the mortgagor to bring a court action to present any defense to foreclosure and default"*, petitioner invoked this tenet, paragraph 22, as the authority that provides such standing to vindicate this controversy at last, the validity of the 2011 purported MERS assignment of the mortgage and note.

142.    This standing under paragraph 22 was affirmed by various courts, see *Federal Natl. Mort. Assn. v. Marroquin,* 477 Mass. 82 (2017) citing *Pinti v Emigrant Mortgage Co.* 472 Mass 226, 33 N.E. 3d 1213 (2015). The authority provides standing to bring a court proceeding to present any defense to default, acceleration and foreclosure. The instant issue and the defense that was intended to present was that the mortgage was discharged in 2011 by its then-owner and claimed it loss, therefore the mortgage is therefore void. And the subsequent claimed owners/assignees of the subject mortgage obtained fake ownership of the subject void mortgage through the 2011 fabricated MERS assignment claiming that it was effectuated under the name of a myth called MERS granting PennyMac, and later its successors fraudulent and nonexistent ownership of this mortgaged property that had no validity and cannot be sustained by law, see *Lopez, Bailey supra, Culhane supra* (First Circuit) as noted above.

143.    Thus in such instance and under paragraph 22, when the homeowner is served with such a notice under paragraph 22, which was served upon him dated May 31, 2018, had the standing as affirmed by case law, (*Pinti, Marroquin supra*) to a forum of a legal proceeding to present defense to foreclosure and default. The defense to default was that the servicer had abruptly changed and the then-replaced servicer asserted that the stipulated modified monthly payment constituted default and refused to accept any further monthly payments, see notice as exhibit 1. However the issue of default was not decisive, rather the core issue of this controversy and the defense that paragraph 22 was intended to achieve and adjudge in that action was the fate of the

subject mortgage that had been discharged by then-owner, as such, the 2011 fabricated MERS assignment had no validity.

144.    Keep in mind also that said provision 22 was inserted in most if not all Massachusetts residential mortgages in this nonjudicial foreclosure state to afford such a forum and standing to homeowners to resolve any contentious issue regarding the mortgage at issue that the foreclosing outfit seeks to foreclose. This provision provides standing to bring an action to present any defense to foreclosure or default if the homeowner has such defense. This provision can be invoked when a foreclosing entity moves forward to foreclose.

145.    As noted, this authority, paragraph 22, was inserted in this nonjudicial foreclosure state where anyone can foreclose on properties without any court's authorization or supervision. Therefore, although it is true that the issue and validity of this purported MERS assignment was subject to a previous proceeding (also removed), however the merits of the issues were never adjudged. Rather said claims were dismissed citing lack of standing and adopting the averments of the opposing lawyer who employed this baseless argument, see copy of the dismissal ruling dated November 23, 2016 regarding the 2015 removed action, exhibit 5. It specifies that the petitioner lacked standing to challenge the assignment of the note and mortgage. There was no adjudication of the merits of the instant contention regarding the validity of the assignment of the mortgage and note in the 2015 removed action, therefore that dismissal was **without prejudice**, see *Lemelson supra* that addressed such circumstance of dismissal (emphasis added).

146.    Thus, and since said provision 22 affords standing as a matter of law per se (see *Marroquin, Pinti supra)*, to present defense to foreclosure and acceleration when petitioner was served with the May 31, 2018 notice of default under paragraph 22, petitioner then did have the standing to bring the 2018 action invoking said authority, paragraph 22, as affirmed by case law.

147.    Petitioner filed in the Land Court in June 2018, case 18 MISC 000319 to vindicate at last the validity of the purported 2011 MERS assignment. The opposing lawyer once again removed said case 18 MISC 000319 in July 2018 to the same district Judge Talwani, the case was captioned as 18-cv-11534. And as he always did, he followed with his typical motion to dismiss under Rule 12(b)(6) citing now res judicata that entitled him to the dismissal of this removed action.

148.    He averred in his motion to dismiss the removed action 18-11534 certifying under Rule 11 that claims under paragraph 22 should be dismissed twisting the objective of paragraph 22 averring to Judge Talwani that the purpose of paragraph 22 was to notify the homeowner of his right to file a lawsuit, and nothing else. Thus under his averments to the judge, as long as a notice under paragraph 22 is sent as mandated by paragraph 22, he and his debt collectors clients can then moves forward to foreclose (also without even complying with the statutory requirement of G.L.c. 244 § 35A and G.L.c. 244 § 35B). In other words his instant arguments were utterly

frivolous and deceiving and would make the objective of paragraph 22 totally pointless in which no reasonable minded jury would sustain.

149.    He further cited baseless case law to support his deceiving arguments regarding the objective of said paragraph 22. He disputed that the objective of said paragraph 22 is to provide a forum to adjudge and resolve contentious issues and to present defense to foreclosure and to prevent unlawful foreclosure to take place when the applicable facts or law render that the foreclosure would be unlawful and would be invalidated if it occurred.

150.    Instead, the opposing lawyer argued that his clients can move forward and foreclose despite that the objective of said paragraph 22 was to resolve any contentious issues that illustrate the foreclosure would be unlawful. He once again cited pointless case law, *Suffolk Constr. Co. v. Lnaco Scaffolding Co.*, 47 Mass. App.Ct 726, 729, (1999) arguing that the case supported his proposition that his debt collectors clients can move and foreclose on void mortgage (and without even complying with G.L.c. 244 § 35A and G.L.c. 244 § 35B) arguing that there was nothing written in paragraph 22 to requires his clients not to foreclose even when there are claims that illustrate that the foreclosure would be unlawful.

151.    The opposing lawyer's averments and motion to dismiss was absurd and deceiving legal pleadings that Rule 11, and controlling law regarding pleadings requirements see First Circuit (*Salois supra*) and district court (*McCarty supra*) expressly prohibit.

152.    Keep in mind that various courts invalidated foreclosures when the foreclosure entities sent notices under paragraph 22 that contained slightly unclear language regarding the homeowner's right to have a court proceeding to present defense to foreclosures. The obvious reason was that the objective of paragraph 22 is to assure that the foreclosure is warranted and appropriate and will not be invalidated. Paragraph 22 is intended to provide the consumer such court proceeding to be the forum that affords the homeowner standing in a legal action in this non-judicial foreclosure state to present and resolve any contested issues that make the foreclosure inappropriate, and prior to foreclosure. See *Pinti, Marroquin supra* and countless other cases.

153.    Put it differently that if the objective of paragraph 22 is to grant standing to resolve any contention that prospective foreclosure would be unlawful, but the opposing lawyer argued that his clients can move forward and foreclose after notifying consumers of the right to present defense that would be intended to show that the foreclosure would be unlawful would make the objective of said paragraph 22 totally obsolete and no reasonable jury would sustain such deceiving and disingenuous argument.

154.    The arguments that the opposing lawyer had advanced and deceived Judge Talwani that the purpose of paragraph 22 was for notification and nothing else was deceiving legal practice

that Rule 11 sanctions specifically when case law that addressed similar circumstances provides the contrary and rejects the opposing lawyer's ludicrous contentions. See *James B. Nutter & Co. v. Estate of Murphy,* 478 Mass. 664 (2018), instructs that: "**when interpreting adhesion provisions courts seek to effectuate [] the meaning an objectively reasonable person would give to the language in the contract**. See, e.g., *Golchin v. Liberty Mut. Ins. Co.,* 466 Mass. 156, 159–160, 993 N.E.2d 684 (2013)", (emphasis added).

155.   Although Judge Talwani dismissed the 2018 removed action but did not mention in the May 13, 2019 dismissal the objective of paragraph 22. Rather she only referenced the issue regarding notice compliance with said paragraph 22, however petitioner did not plead in the removed action this issue regarding procedural noncompliance with the notification of paragraph 22. Rather he brought the issue while the removed action was kept dormant indefinitely and the opposing lawyer and his clients moved to foreclose on this discharged mortgage and without complying with G.L.c. 244 §§ 35A and 35B which also would make the foreclosure unlawful.

156.   Petitioner then brought an action in the Land Court on February 8, 2019, case 19 MISC 000067, citing the ruling of *Pinti v Emigrant Mortgage Co. supra* as authority that make the foreclosure invalid as was also affirmed by this court, Judge Burroughs in *Paiva v. Bank of N.Y. Mellon,* 120 F. Supp. 3d 7, 10 (D. Mass. 2015) relying on the instruction of *Pinti v Emigrant Mortgage Co. supra* that also would make the prospective foreclosure unlawful for failing to comply with the procedural notification of paragraph 22.

157.   Note that the Land Court held an immediate hearing on February 13, 2019, and upheld the ruling of Paiva, however the opposing lawyer argued that the state court was prohibited to issue such injunction because the there was the pending 2018 removed action. The Land Court issued a 14 days injunction and order to seek permanent injunction under Paiva from Judge Talwani. Petitioner did. The opposing lawyer of course opposed it, and Judge Talwani rejected to uphold the ruling of Paiva in total disregard to common judicial comity reversing the ruling of the Land Court rendered on February 14, 2019 in action 19 MISC 000067; and refused to follow the ruling of Judge Burroughs in Paiva.

158.   The May 13, 2019 dismissal, see copy as exhibit set B made no reference to the objective of paragraph 22, rather she made some observation regarding the procedural compliance with paragraph 22 stating first that petitioner was barred under res judicata and that he argued that his lender was "Citimortgage" (see page 8, middle of page, exhibit set B) which made no sense since petitioner did not make such assertion or even made any logic to make such baseless assertion; then she noted that she could not find controlling case law on the subject issue (page 9, upper page, exhibit set B)  which she also cited in her ruling dated February 28, 2019 to deny petitioner an injunctive relief for the opposing lawyer's clients' failure to comply with this procedural requirement serving notices under paragraph 22 as instructed by the SJC in the Pinti case that Judge Burroughs upheld in *Paiva.* To the contrary, petitioner cited the Paiva case as the

authority, and keep in mind the Land Court upheld Paiva in a written memorandum dated February 14, 2019. Therefore the ruling that there was no case law regarding compliance with procedural notification of paragraph 22 was not accurate; See Paiva.

**(5) MOTION TO DISMISS RESPA CLAIM WAS FRAUD ON THE COURT AND VIOLATION OF RULE 11-YET JUDGE TALWANI BLINDLY SUSTAINED THIS FRIVOLOUS ARGUMENT AND DISMISSED THE CLAIM WAS ILLOGICAL, UNREASONABLE AND UNCONSTITUTIONAL**

159.     The opposing lawyer filed his typical baseless motion to dismiss here was the RESPA claim. He argued to dismiss RESPA claim, 12 U.S.C. § 2605(b)(2), that the claim should be dismissed because the plaintiff did not incur damages out of violating said 12 U.S.C. § 2605(b)(2). As always the case, Judge Talwani sustained this false argument and dismissed RESPA claim.

160.     To the contrary, first petitioner pled damages from this RESPA non-compliance in which this outfit Fay Servicing moved to foreclose on a void mortgage and without complying with the statutory requirement of G.L.c. 244 § 35A and G.L.c. 244 § 35B. Nevertheless even if petitioner pled no damage, RESPA claim can move forward. The opposing lawyer's argument was another pleading that Rule 11 expressly prohibits.

161.     Some causes of action, specifically compliance with statutory requirements, do not require to plead damages. For example the SJC invalidated foreclosures for not complying with certain mandatory statutory requirements. See *Pinti v Emigrant Mortgage Co.* 472 Mass 226, 33 N.E. 3d 1213 (2015) where the SJC invalidated the *Pinti* foreclosure for failure to comply with certain statutory requirement under G.L.c. 183 § 21 and despite that Pinti plaintiff did not or could not plead damages.

162.     In short, compliance with statutory requirements is mandatory regardless or not damages were pled. This district court upheld this theory, see Judge Allison Burroughs' ruling in *Paiva v. Bank of N.Y. Mellon,* 120 F. Supp. 3d 7, 10 (D. Mass. 2015) relying on the instruction of *Pinti v Emigrant Mortgage Co. supra.* Although Judge Talwani refused to uphold the Paiva Ruling, but it is well settled law that compliance with statutory requirements under legislator intent must be complied with regardless whether damages pled or not; otherwise the servicing transfer to Fay Servicing cannot be valid under the requirement set forth by congress in 12 U.S.C. § 2605(b)(2).

163.     Therefore the opposing lawyer's averment that RESPA claim should be dismissed since petitioner did not plead damages was contrary to controlling case law regarding compliance with statutory requirements noted above. Judge Talwani adopted the instant baseless argument was troubling to constantly adopt such baseless arguments that lacked any logic or support by law.

**(6) MOTION TO DISMISS CLAIMS UNDER G.L.c. 244 § 35A and G.L.c. 244 § 35B CONSTITUTED FRAUD ON THE COURT AND VIOLATION OF RULE 11- JUDGE TALWANI'S SUSTAINING THIS FRIVOLOUS ARGUMENT AND DISMISSED THE CLAIM WAS ILLOGICAL, UNREASONABLE AND UNCONSTITUTIONAL**

164.    Next episode of the opposing lawyer's deceiving averments in his motion to dismiss cause of action of defying to comply with G.L.c. 244 § 35A and G.L.c. 244 § 35B arguing that said claim should be dismissed making two frivolous contentions. First he argued that claims under G.L.c. 244 § 35A and G.L.c. 244 § 35B should be dismissed playing his famous mantra of res judicata. But this was not all. He went on and also argued and cited deceiving case law to support his frivolous motion to dismiss the instant claims arguing that his clients were not required to comply with G.L.c. 244 § 35A and G.L.c. 244 § 35B. He brazenly cited a First Circuit case, *MacKenzie v. Flagstar Bank, FSB*, 738 F. 3d 486 (1st Cir. 2013), averring to the court that this case illustrates that his clients did not have to comply with G.L.c. 244 § 35A and G.L.c. 244 § 35B.

165.    To the contrary the opposing lawyer's citation to *MacKenzie* was fraud on the court and frivolous averments that Rule 11 prohibits. The *MacKenzie* citation was deceiving because the *MacKenzie* case entailed claim of a borrower who sought to compel compliance with HAMP modification, and not like in this instance where the petitioner's cause of action was the defiance to comply with G.L.c. 244 §§ 35A and 35B. The First Circuit was correct to deny MacKenzie's claim because most courts that reviewed claims under HAMP had determined that HAMP did not provide cause of action for refusing to afford loan modification under HAMP. On the other hand, in this instance was that Fay Servicing and Wilmington Trust moved to accelerate and foreclose on the subject (void) mortgage without compliance with G.L.c. 244 § 35A and G.L.c. 244 § 35B.

166.    G.L.c. 244 § 35A(b) provides that:  *"The mortgagee, or anyone holding thereunder, shall not accelerate maturity of the unpaid balance of such mortgage obligation or otherwise enforce the mortgage because of a default consisting of the mortgagor's failure to make any such payment in subsection (a) by any method authorized by this chapter or any other law [unless] a written notice is given by the mortgagee to the mortgagor."* (emphasis and underline added).

167.    Neither Wilmington Trust nor Fay Servicing complied with these statutory requirements under G.L.c. 244 § 35A and G.L.c. 244 § 35B. Their defiance to comply with these statutes forcing petitioner into bankruptcy inflicting grave irreparable harms upon petitioner. Such defiance to comply with G.L.c. 244 § 35A and G.L.c. 244 § 35B constituted deceptive and unlawful practice under 93A that entitled petitioner to relief for his damages.

168.    In light of the cited grounds, the opposing lawyer's motion to dismiss claims of defying to comply with G.L.c. 244 § 35A and G.L.c. 244 § 35B and deceived Judge Talwani with such

false citation to inapposite case law, *MacKenzie,* was fraud on court and violated the legal practice as defined by Fed. Rule Civ.P. 11(b), and as affirmed by the First Circuit in *Salois v. Dime Sav. Bank of N.Y supra* and by the district court in *McCarty supra,* as such the opposing lawyer's motion to dismiss the claim of compliance with G.L.c. 244 § 35A and G.L.c. 244 § 35B should be vacated; and sanction is warranted to reprimand such egregious practice.

169.    Judge Stearns wrote in *McCarty supra* that the opposing lawyer was required that his pleadings and averments tendered to the court must be truthful and that he has *"conduct[ed] a reasonable inquiry and determined that any papers filed with the court [were] well grounded in fact, legally tenable, and 'not interposed for any improper purpose.' **An attorney who signs the paper without such a substantiated belief 'shall' be penalized by 'an appropriate sanction.'*** (emphasis added).

170.    The controlling case law is crystal clear regarding compliance with G.L.c. 244 § 35A and G.L.c. 244 § 35B, otherwise the acceleration and foreclosure would be unlawful under G.L.c. 244 § 35A(b). See *Schumacher U.S. Bank v. Schumacher,* 467 Mass. 421, 5 N.E.3d 882 (2014); *Bank of New York Mellon Corp. v. Wain,* 85 Mass.App.Ct. 498, 11 N.E.3d 633, 636, (Mass. App. Ct. 2014) citing the mandatory compliance with said § 35A.

171.    This district court affirmed such statutory compliance with said G.L.c. 244 § 35A and G.L.c. 244 § 35B. See the memorandum articulated by then-Judge Saylor in *Stokes v. Wells Fargo* 13-13137-FDS dated June 12, 2014 that also affirmed the mandatory compliance with G.L.c. 244 § 35A and G.L.c. 244 § 35B.

172.    Therefore the opposing lawyer's averments that claims under G.L.c. 244 § 35A and G.L.c. 244 § 35B should be dismissed and that his clients were not required to comply with these statutes citing false and inapposite case law, *MacKenzie v. Flagstar Bank, FSB,* 738 F. 3d 486 (1st Cir. 2013), arguing that said case purportedly supported his contention that the claims should be dismissed and that his clients did not have to comply with G.L.c. 244 § 35A and G.L.c. 244 § 35B 5B were willful deceiving and false pleadings and fraud on the court averments that Rule 11 prohibits. And although the opposing lawyer should be sanctioned for averring such deliberate false pleadings, however Judge Talwani acted recklessly once again to adopt such frivolous motion to dismiss the instant claim. Her judicial performance was arbitrary, bias, unjustifiable and unconstitutional to constantly adopt such chronic frivolous pleadings.

173.    It is worthy on the occasion to cite a case that the opposing lawyer also represented Fay Servicing and Wilmington Trust who engaged in willful unconscionable practice to foreclose when the homeowners were in a trial-payment period and complied with the payments as provided by the parties' agreement. See Wilson et al v. Fay Servicing, LLC et al (1:18-cv-12191), Judge Saylor presided, and denied their motion to dismiss in 2018, and the case was recently settled. The Wilson case was a telling and illustrates the unconscionable practice of Fay

Servicing and Wilmington Trust who foreclose on the Wilson while they were in trial payment. The Wilson complied with the trial payments for five month and the sixth month as well. However Fay Servicing in their rush to foreclose claimed that the Wilsons did not send the sixth payment. There is no reasonable minded jury would believe that the homeowners who sent five payments timely to comply with their obligation but they would miss the sixth payment. Rather the record speaks for itself. Fay Servicing and Wilmington Trust are a notorious debt collectors have no interest to comply with governing law except their rush to foreclose and reap the windfall from such forecloses on mortgages that had been discharged. Attached are list of the number of lawsuit involve Fay Servicing and Wilmington Trust, as exhibit set A, shows 1370 cases and 354 cases involved Wilmington Trust and Fay Servicing respectively. Attached also in exhibit set A, Consumer Financial Protection Bureau (CFPB) fined Fay Servicing For Unlawful Force-Placed Insurance Violation of 12 U.S.C. §§ 2605 k(1)(A) and (m); and also fined Fay Servicing for unlawful foreclosures like the Wilson foreclosure and the one that Wilmington Trust and Fay Servicing are in process to initiate in this case, to foreclose on a void mortgage and defied compliance with G.L.c. 244 § 35A and G.L.c. 244 § 35B that would make the foreclosure unlawful and will be invalidated under *U.S. Bank v. Schumacher*, 467 Mass. 421, 5 N.E.3d 882 (2014) and *Bank of New York Mellon Corp. v. Wain*, 85 Mass.App.Ct. 498, 11 N.E.3d 633, 636, (Mass. App. Ct. 2014) Footnote 10, foreclosures without complying with Section 35A will not convey clear title.

### *(7) THE ULTIMATE ISSUE IS THAT THE DISTRICT COURT LACKED JURISDICTION TO DISMISS THE REMOVED ACTION 18-11534 UNDER THE FIRST CIRCUIT'S RULING IN MILLS*

174.    The ultimate issue in this controversy is not the frivolous motions to dismiss that the opposing lawyer had employed throughout this long controversy; not the erroneous rulings rendered by Judge Talwani to constantly sustain the opposing lawyer's false pleadings, rather Judge Talwani lacked jurisdiction to dismiss the 2018 removed action 18-11534 and issue the sanction order (allowing the opposing lawyer's motion to dismiss and motion to sanction petitioner) under the First Circuit's ruling in *Mills v Harmon Law Offices, P.C., Salem Five Cents Savings Bank et al* , 344 F.3d 42 (2003).

175.    First and foremost the removal of the 2018 action was improper because there was no complete diversity among the parties, as such, action 18-11534 may not have been appropriate to be removed. But yet the opposing lawyer removed the Land Court action 18 MISC 000319 averring to the court otherwise concealing the ownership of PennyMac which is substantially owned a Massachusetts company located in Boston, Highfields Capital Management or HC Partners LLC, attached is a document that depicts this ownership correlation, as exhibit 9. Therefore the removal was not be appropriate, and in such circumstance the district court lacked jurisdiction to hear and render rulings in said removed action 18-11534 under *Mills supra*.

176.    Note that the First Circuit vacated the district court's dismissal in Mills because the federal claim was under RICO was dismissed since it was improperly pled, then the district court was no longer had jurisdiction to retain the Mills case. Likewise in this instant removed action 18 MISC 000319 (action 18-11534), there was a federal claim under RESPA, however after the district court allowed opposing lawyer's frivolous demand to dismiss said RESPA claim as discussed above, the district court lacked jurisdiction to hear and dismiss the removed action 18 MISC 000319 under the First Circuit's instruction in *Mills*. The First Circuit wrote:

"The language of this provision unambiguously precludes federal courts from reaching the merits of a removed case when it lacks subject matter jurisdiction over the dispute. We have historically construed this passage strictly:
We think ... that the district court erred in departing from the literal words of § 1447(c), which, on their face, give it no discretion to dismiss rather than remand an action. And, we are unwilling to read such discretion into the statute here, because we cannot say with absolute certainty that remand would prove futile."

177.    Therefore under the First Circuit's ruling in *Mills supra*, the district court's dismissal of the 2018 removed action, and the sanction order rendered in the removed action 18MISC000319/ 18-11534 shall be reversed, and the action seeks the instant relief and to remand this matter back to Land Court, action 18 MISC 000319.

## (8) THE SANCTION ORDER WAS UNJUSTIFIABLE AND CANNOT BE SUPPORTED BY LAW OR FACT- JUDGE TALWANI'S SUSTAINING THIS FRIVOLOUS ARGUMENT AND DISMISSED THE CLAIM WAS UNREASONABLE AND UNCONSTITUTIONAL

178.    Even if the district court had the jurisdiction over the removed 2018 action, the opposing lawyer's motion to sanction plaintiff for seeking to adjudge the validity of the mortgage conveyance in the 2018 removed action where such standing was afforded under the authority of paragraph 22, was frivolous and lacked any justification of fact or law. As noted above the district court lacked jurisdiction to preside over the removed action when RESPA claim was dismissed, see *Mills*.

179.    Even if Judge Talwani had the jurisdiction to preside over the removed action 18-11534, the opposing lawyer's motion to dismiss, and motion to sanction petitioner were totally frivolous as outlined above. The troubling of this controversy was as illustrated above, Judge Talwani sustained every pleading and motion the opposing lawyer submitted. Relevant here was the motion to dismiss the 2018 removed action was frivolous in its entirety; the argument that validity of the 2011 devious MERS assignments of the mortgage and note should be dismissed citing res judicata was fraud on the court since under governing law in order to plead res judicata adjudication of the merits must be occurred. This did not take place as noted above. Both federal and state law rejects the argument of res judicata absent of adjudication the merits of the controversy. This was upheld by a gifted judge, Judge Woodlock who addressed the application

of res judicata and preclusion in *Okoye v. Bank of New York Mellon*,10–11563–DPW, July 28, 2011, 2011WL3269686 (D. Mass. 2011). *"In order for claim preclusion to attach under the doctrine of res judicata, there must be "(1) a final judgment on the merits in an earlier action"* citing the controlling precedent of the First Circuit in *Hermes Automation Technology, Inc. v. Hyundai Electronics Industr. Supra* and *Kale v. Combined Ins. Co. of Am. supra*. The Massachusetts Appeals Court addressed same in *Sarvis v. Boston Safe Deposit and Trust Co.*, relying on the SJC's instruction in *Heacock v. Heacock*, 402 Mass. 21, 23 n. 2, 520 N.E.2d 151 (1988); Judge Saris addressed same adopted M. Judge Collings finding in Lemelson v. U.S. Bank Nat'l Ass'n, No. 11-cv-12050-PBS, Doc. 16 at 9 (D. Mass. Mar. 7, 2012) that dismissal for lack of standing is dismissal without prejudice.

180.    Second, as also illustrated above, the opposing lawyer's argument that the objective of paragraph 22 was for notification and nothing else citing frivolously the Suffolk construction case was egregious and fraud on the court legal practice that Rule 11 expressly forbids, but yet again Judge Talwani adopted and dismissed the action. Next the opposing lawyer's argument that his clients did not have to comply with, or were willing to comply with, G.L.c. 244 § 35A and G.L.c. 244 § 35B because there was nothing in the mortgage papers that requires compliance with said statutes and yet citing frivolously the MacKenzie case was not only disingenuous practice prohibited by Rule 11 but was a humiliation to Judge Talwani and the justice system to make such evasive averments thinking that the court would parrot being submitted by a lawyer under Rule 11. Astoundingly, Judge Talwani sustained and dismissed the instant claim. Next his argument that claim for violating statutory requirement set forth in 12 U.S.C. § 2605(b)(2) should be dismissed because petitioner did not plead damages, an argument rejected by cited case law illustrated above, yet Judge Talwani adopted and dismissed RESPA claim. Next, the opposing lawyer argued that cause of action to determine what could be lawfully owed if the mortgage had not been discharged should be dismissed arguing that res judicata of the 2016 action barred this instant cause of action was beyond absurd. The amount of alleged debt changes constantly specifically when countless debt collectors assumed, and abandoned, collection when they were notified that their claim of ownership was null being derived from devious and fabricated MERS assignments the note and mortgage, and specifically when the notice of debt provided in 2017 contradicted the demand made in 2018, subject of the claim of the 2018 removed action. Yet again Judge Talwani allowed said motion to dismiss this cause of action citing that the opposing lawyer provided an affidavit of his clients demand (see exhibit set B, Footnote 10, pages 13, 14). This was beyond belief that such ruling would take place in civilized society and in this nation of law.

181.    Nevertheless, now the opposing lawyer's motion to sanction petitioner for seeking due process and vindicate this controversy in the 2018 removed action was utterly frivolous and once again disrespectful to Judge Talwani to deceive her to adopt such egregious motion for sanction.

Yet she did. And let delve into the demand to sanction and her justification to parrot the motion and issue the sanction order dated May 13, 2019, see the relevant pages 14, 15, exhibit set B.

182.    In her order allowing the opposing lawyer's demand that petitioner should be sanctioned, Judge Talwani wrote and adopted the opposing lawyer's argument making two deceiving arguments to sanction the plaintiff for seeking due process in the 2018 removed action. The two justifications to sanction petitioner were: that the contentions were "resolved", the finding was inaccurate as illustrated above; and she also cited several inapposite cases to support the sanction, the case law cited was inapposite.

183.    **First Ground**: To reiterate Judge Talwani's sanction order hinged on two set of reasons adopting the opposing lawyer's demand: one was that plaintiff had engaged in "wasteful, frivolous, and harassing lawsuit". She wrote to justify the sanction order as follows. *"Defendants ask this court to issue sanctions against Plaintiff for repeatedly seeking to re-litigate claims and issues already decided against him, See Def. Mot. Sanction 1 [#17]."* She further wrote in her ruling to sanction me that: *"Plaintiff has filed numerous, repetitive actions and motions concerning the same or similar issues. As detailed above, this action sought to re-litigate issues resolved in prior proceedings"* (see copy of the her finding exhibit set B

184.    **Reply One:** First response is that the opposing lawyer's motions for sanction (and dismiss) was frivolous to deceive the freshman judge that sanction was warranted because the *"issues were resolved in prior proceedings"*. The opposing lawyer's averments under Rule 11 that the claims pled in the 2018 removed action (18 MISC 000319) should be dismissed under res judicata because the issue were previously resolved were utterly frivolous because the prior ruling of dismissal was that plaintiff lacked standing to challenge the assignment of mortgage and note", thus the merits of the claims were never adjudicated, see page two of the November 23, 2016 ruling, exhibit 5. (Keep in mind that apposite case law supports my standing and adjudge the instant claim, that is the validity of the purported MERS assignment of the mortgage and note, see *Lopez, Bailey supra* and First Circuit in *Culhane supra*). Therefore to argue that the issues were resolved in prior proceedings when the ruling was a dismissal for lack standing was simply incorrect, frivolous and indeed actionable under Rule 11. See Judge Saris' ruling in Lemelson supra, a dismissal for lack of standing and the merits were not adjudged is a *"dismissal was without prejudice"*.

185.    It is noteworthy to cite again what Judge Stearns wrote in details regarding compliance with the requirements of Rule 11. See *McCarty v. Verizon New England, Inc.*, Ca 1:09-cv-10991-RGS D# 37, 03/25/11. He wrote: "Rule 11 "requires [the opposing lawyer] to '**stop and think**' before making and submitting pleadings. The Rule "also, however, emphasizes the duty of candor by subjecting litigants to potential sanctions **for insisting upon a position after it is no longer tenable**. Let recall the opposing lawyer's argument that the claim for filing he SCRA action should be dismissed because as he argued that such conduct was not related to the 'power

of sale' process, and where this absurd argument was previously rejected by Judge O'Toole in Najda's case as discussed above. How about the opposing lawyer's argument regarding the applicability of paragraph 22, that as he argued was to notify the consumer of the right to file action to demonstrate that the prospective foreclosure would be unlawful but he further argued that his clients can move forward and foreclose anyway making the objective of paragraph 22 totally pointless. But yet Judge Talwani adopted these frivolous contentions and dismissed the action and yet allowed the demand to sanction the petitioner. This was unconstitutional and and grossly unconscionable judicial performance, and this action seeks to redress.

186.   **Second Ground:** She also wrote to justify adopting the opposing lawyer's demand that plaintiff should be sanctioned for seeking to remand the case. The ruling scripted as follow: "*moreover his response to adverse rulings on motions has been to file and refile, with significant burden on defendant and the court. See e.g. Emergency Motion to Remand[#5]; Motion to Dismiss RESPA Claim[#14] (asking the court to dismiss the federal claim so that the case can be remanded); Revised and Renewed Motion to Remand [#16]" etc... sanction is appropriate*".

187.   **Reply Two:** The notion that someone should be sanctioned for seeking to remand a matter to state court to adjudge the claims was unreasonable and cannot justify sanction by any reasonable minded jury specifically when the district court lacked jurisdiction to preside claims under G. L. c. 185, § 1(k) and G. L. c. 214, § 1 as discussed above. See Judge Saris' ruling in *Lemleson supra*; see also the ruling of the First Circuit in *Mills supra*. The request for remand could not be deemed unreasonable to warrant sanction since the countless reasons that were outlined above and further outlined below supported indeed the remand.

188.   Note also that federal courts are courts of limited jurisdiction. See *Picciotto v. Continental Cas. Co.*, 512 F.3d 9, 17 (1st Cir.2008). "The objection that a federal court lacks subject-matter jurisdiction ... may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). "[F]ederal courts have an omnipresent duty to take notice of jurisdictional defects, on their own initiative if necessary." *Whitfield v. Municipality of Fajardo*, 564 F.3d 40, 44 (1st Cir.2009) (citation omitted). Ordinarily, subject matter jurisdiction should be examined as a threshold matter and if found lacking the case should be dismissed without entertaining the merits of the plaintiffs' complaint. *Bolduc v. United States*, 402 F.3d 50, 55 (1st Cir.2005).

189.   Federal courts constantly on removals resolve first the federal claims and remand the action to state courts to adjudge the state and common law claims, see *Lemleson supra*. That said the only federal claim that was included in the Land Court action 18 MISC 000319 was RESPA, 12 U.S.C. § 2605(b)(2) alleging that Fay Servicing lacked lawful servicing right under RESPA.

190.    And since the opposing lawyer removed the action and then filed a motion to dismiss the entire complaint, plaintiff filed a motion to resolve first the federal claim, RESPA, and then the action should have been remanded. Plaintiff filed a motion for this objective, that was to determine the RESPA claim first and then to remand the action. The opposing lawyer opposed it, she of course sustained the objection and denied plaintiff's motion to determine RESPA claim first and to remand. The ruling was contradictory to the rulings rendered by district court, see Judge Saris in Lemelson v. U.S. Bank Nat'l Ass'n, No. 11-cv-12050-PBS, Doc. 16 at 9 (D. Mass. Mar. 7, 2012) in which Judge Saris adopted Magistrate Judge Collings who determined that Lemelson "lacked standing in federal court". And more relevantly, see the First Circuit's ruling in *Mills Supra* 344 F.3d 42 (2003) reversing rulings by district judges that lacked jurisdiction to hear certain removed action(s).

191.    Keep in mind that there was no complete diversity among the parties; PennyMac is substantially owned by a Massachusetts company, attached is a copy of certain government filing that that shows the percentage of PennyMac's ownership, exhibit 9.

192.    There is another case and citation worthy of noting that further illustrate that the removal was inappropriate since there was no complete diversity among the parties, specifically PennyMac where a Massachusetts company owns substantial portion of it as noted above. See the case of Citibank as trustee of SWDNSI Trust v Najda, case# 14-cv-13593-GAO, 2016 WL 158502. That case has also other significant points to this instance. Both cases entailed same script and actors, i.e. PennyMac and Citibank as trustee of SWDNSI Trust each claimed ownership of the subject mortgage; and Polansky was the lawyer in both cases, however in the Najda's case he represented Citibank and argued that PennyMac's MERS mortgage assignment was invalid, and rather Citibank as trustee of SWDNSI Trust was the owner of that mortgage; as oppose to in this case he argued the opposite. However the other significance of that case was that the opposing lawyer of Najda's case (same lawyer in this case) did not comply with Local Rule 7.3 and file a corporate disclosure of PennyMac simply because PennyMac is substantially owned by a Massachusetts company (see exhibit 9) that destroyed complete diversity to be in the federal court. See Footnote #5 of the Najda's case where Judge O'Toole noted: "*Only Citibank has filed a corporate disclosure statement in accordance with Local Rule 7.3.*"

193.    Thus and once again the removal of case# 18 MISC 000319 by PennyMac and the opposing lawyer to the federal court was inappropriate, as such, as noted above, the district court lacked jurisdiction to hear and render a ruling in that case, see the First Cir's ruling in *Mills supra*. Therefore for all these reasons plaintiff's motion(s) to remand case# 18 MISC 000319 was not inappropriate to justify sanctioning plaintiff for seeking to remand and adjudicate the case in the state court.

194.    Nevertheless, the instant issue is that seeking to remand the action to state court to resolve the matter equitably and adjudge fairly the merits of this matter cannot justify that

plaintiff be sanctioned specifically since the issues were never resolved, rather the dismissal was based on lack of standing, see the November 23, 2016 ruling, exhibit 5.

195.   Lastly it should be re-iterated that when dismissals that do not resolve the merits of the claims, i.e. lack of standing, these dismissals are without prejudice. See Judge Saris' ruling in a case that she dismissed for lack of standing, it specified that the dismissal was without prejudice, *Lemelson v. U.S. Bank Nat'l Assoc.*, No. 12-10677-PBS, 2012 WL 4527527, at *4 (D. Mass Sept. 28, 2012) (Saris, J.). Judge Saris concluded the ruling stating that "the dismissal was without prejudice to challenging the foreclosure in **state court."** (emphasis added to stress that the dismissal of claims without adjudicating the merits and where such claim that has exclusive jurisdiction of the state court is a dismissal without prejudice in removals and shall be adjudged in the state court.) Keep in mind the congress' intent spelled out in 28 U.S.C. § 1447(c) to preclude federal jurisdiction in such circumstances, see *Mills supra*, First Circuit.

196.   And even arguendo if plaintiff's motion(s) to remand lacked the merit to be granted, which was not the case, there still would not be any justifications to sanction someone for seeking to remand and adjudge this matter in state courts that "favor homeowner". See Judge Young's citation on this very issue when he concluded the ruling in *Jepson v Deutsche Bank*, 12-11226-WGY, 2012 WL 4341061 (D. Mass. 2013): "*We shall thus endure the **unseemly spectacle of homeowners scrambling** to devise a procedural gimmick to stay in the state court while banks swiftly remove to federal court where the same state law now favors them.*" Keep also in mind what Judge Young wrote when he dismissed the *Culhane supra* case that he would not have dismissed the case if he heard it in the state court, which he addressed the advantage of adjudicating cases in the state court to homeowners. (emphasis added).

197.   Lastly, there is another proper citation to a case that also supports that plaintiff had the choice where to adjudge this controversy, that is in the state court, see *Phoenix Insurance v. Door, Window & Insulation* CA 14-10698-GAO February 17 and March 13, 2015. It states as follows: "*While Phoenix has in interest in proceeding in the forum of its choice*" (Senior Judge O'Toole).   Therefore I had the choice where to adjudge this matter. I chose the state Land Court as the "*forum of [plaintiff's] choice*".

## THE CASES CITED TO JUSTIFY SANCTION WERE INAPPOSITE

198.   Judge Talwani cited several cases to justify adopting the opposing lawyer's demand that plaintiff should be sanctioned (pages 14-15 of the May 13, 2019 dismissal), these cases were inapposite. These cases entailed cases that their merits were determined unlike in the instant matter where the claims were dismissed for lack of standing, such dismissal was a dismissal without prejudice as discussed above. Judge Talwani also pointlessly scripted in the sanction order lines from the Fed. Rule 11 of Civ. P. that had no relevancy or correlation to the instant controversy; and her citations to these cases were equally pointless.

***The Citation To The Jones Case Was Error Of Logic And Law***

199.    Apparently and in order to parrot the opposing lawyer's frivolous motion to sanction
plaintiff, she absurdly cited cases parroting the opposing lawyer's citations. First she cited the
case of Jones v. Soc. Sec Administration No. C.A. 03-12435-DPW, this case was inapposite. It
entailed an unstable person, a disable person (unclear whether his disability was physical or
mentally or both), he received mistakenly additional disability payments; and when the
government sought the repayment of the excess payment, he engaged in endless lawsuits. That
case, Jones, was not similar to my case, the merits of Jones case were adjudicated. This citation
to such case was error of logic and law. The citation to Jones illustrated the pattern of illogic
rulings that Judge Talwani arbitrary rendered parroting the opposing lawyer's false and
deceiving averments throughout this long controversy, and this was very alarming in this saga.
The ruling in Jones was right on point, rendered by a very gifted district judge Woodlock, J.
Whereas in this controversy, the initial ruling was that plaintiff as homeowner lacked standing to
contest the validity of the mortgage assignment, therefore the merits were never adjudged; and
that dismissal for lack of standing was a dismissal without prejudice dismissal.

***The Citation To The Chambers Case Was Error Of Logic And Law***

200.    Judge Talwani also cited *Chambers v. NASCO. Inc.*, 501 U.S. 32, 33 (1991) to justify
issuing sanction order. This citation was equally inapposite and has no comparison to this
instance here at bar. The merits of the Chamber case were also adjudged in the initial litigation,
as oppose to this instant controversy, the merits were never adjudged as noted above. The
chambers case is similar to a case that people of this city are familiar with, the decade-long
fiasco of Anthony Athanas of the former Pier 4 restaurant in his endless litigation with the Hyatt
Hotel family. The parities executed a purchase and sale agreement for the sale of Anthony
Athanas' property, however, when the property values of this town started to skyrocket, Anthony
Athana wanted to rescind the agreement. There is tons of case law on the subject issue, the
specific performance. Same scripts took place in the Chambers case. In that case, the seller
Chambers signed a P&S agreement to sell his television station to include the property and the
television license and equipments to NASCO Inc. However Chambers, like Anthony Pier 4
seller, changed his mind when the property value started to spike up, NASCO the buyer brought
a case of specific performance and won. Thus the merits of Chambers case were adjudged.
Chambers then engaged in frivolous lawsuit to frustrate the buyer to relinquish the sale. The
higher court entered sanction against Chambers for abusing the judicial system and file frivolous
lawsuits to dissuade the buyer to back out from buying the station.

201.    The citation to Chambers case was once again an error of logic and law. These two cases
were not apposite to the instant controversy in which the merits were never adjudged. Rather the

opposing lawyer argued in the 2015 removed action that plaintiff as homeowner lacked standing to adjudicate the validity of the assignment of the mortgage and note. Judge Talwani sustained the opposing lawyer's deceiving averments made in his motion to dismiss and dismissed the action in a ruling dated November 23, 2016 dismissing the claim citing that the homeowner lacks standing to contest mortgage assignments, and as such, the merits and validity of the subject 2011 MERS assignment were never adjudged.

202.     Note also the motion to dismiss the claims for damages pled in action 18-11873 allowing the opposing lawyer's frivolous motion to dismiss was also another troubling ruling that was bias to grossly deny someone due process of law and this was undisputable unconstitutional.

203.     In sum, the sanction order was unjustifiable whether or not Judge Talwani had jurisdiction to preside and dismiss the removed action after she dismissed the RESPA claim and shall be reversed under the First Circuit ruling in *Mills Supra*.

There was another action that was also removed from Judge Saris' session, action # 20-11951 that discussing it is not warranted to expand this unfortunate background any further. Rather it is suited to sum up this long complaint with this summary.

## CONCLUSION

204.     This case is a typical case of unlawful practice of debt collectors and their lawyers that troubled the congress and triggered it to enact the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. to include 15 U.S.C. § 1692d, and 15 U.S.C. § 1692f. The instant controversy and the practice of the opposing lawyer and his clients is the practice that troubled the congress and described it in 15 U.S.C. § 1692(a): : *"There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy"*.

205.     This unworthy legal practice that defied the requirements of Rule 11 and its related controlling precedent set forth by the First Circuit and this court, see *Salois v. Dime Sav. Bank of N.Y.*, 128 F.3d 20, 28 (1st Cir.1997): *"Rule 11 calls for the imposition of sanctions on a party "for making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an 'improper purpose"*; also see the memorandum that Judge Stearns articulated in *McCarty v. Verizon New England, Inc.*, Ca 1:09-cv-10991-RGS D# 37, 03/25/11: "Rule 11 "requires [the opposing lawyer] to *'stop and think' before making and submitting pleadings. The Rule "also, however, emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable"*. (emphasis added) is what one Judge of this court described when he affirmed a $250 Thousand fine sanction a lawyer and his law firm (that no longer in business). The court wrote:

"After 43 years at the bar, the saddest thing about this case is the conduct of the lawyers — **all the lawyers**", []: "**How is it that our profession, the legal profession ….**instead has eagerly aided and abetted those very excesses? [and] <u>How could we (all of us who profess to be lawyers) have fallen so low</u>?" [] **We've been making these misrepresentations for years [and] no one seemed to care.**" (emphasis and underline added).

See Nosek v. Ameriquest Mortgage Co.; Ablitt&Charlton, P.C.; Buchalter Nemer, PC; Wells Fargo Bank, et al: 406 B.R. 434., Civil Action No. 08–40095–WGY. May 26, 2009.

206.    There is pattern of unlawful practice of Fay Servicing and Wilmington Trust chronic unlawful foreclosure practices. There was a case tried here and the opposing lawyer also represented Fay Servicing and Wilmington Trust that further tells on the unlawful practice of these outfits. Fay Servicing and Wilmington Trust foreclosed on a property when the homeowners were making payments in a trial-payment period and complied with the payments as provided by the parties' agreement, see Wilson et al v. Fay Servicing, LLC et al (1:18-cv-12191), Judge Saylor presided, and denied their motion to dismiss in 2018, and the case was recently settled. The Wilson case was a telling and illustrates the unconscionable practice of Fay Servicing and Wilmington Trust who foreclose on the Wilson while they were in trial payment. The Wilson complied with the trial payments for five month and the sixth month as well. However Fay Servicing in their rush to foreclose claimed that the Wilsons did not send the sixth payment. There is no reasonable minded jury would believe that the homeowners who sent five payments timely to comply with their obligation but they would miss the sixth payment. Rather the record speaks for itself. Fay Servicing and Wilmington Trust are a notorious debt collectors have no interest to comply with governing law except their rush to foreclose and reap the windfall from such forecloses on mortgages that had been discharged. See the list of the number of lawsuits involve Fay Servicing and Wilmington Trust, as exhibit set A, shows 1370 cases and 354 cases involved Wilmington Trust and Fay Servicing respectively. Attached also in exhibit set A, Consumer Financial Protection Bureau (CFPB) who fined Fay Servicing for unlawful Force-Placed insurance in violation of 12 U.S.C. §§ 2605 k(1)(A) and (m) and in violation of 209 CMR 18.21(3) *"Requiring the unnecessary forced placement of insurance, when adequate insurance is currently in place"*. The CFPB also fined Fay Servicing for unlawful foreclosures like the Wilson foreclosure and the one that Wilmington Trust and Fay Servicing are in process to initiate in this case, to foreclose on a void mortgage, and defied compliance with G.L.c. 244 § 35A and G.L.c. 244 § 35B that would make the foreclosure unlawful and will be invalidated under *U.S. Bank v. Schumacher*, 467 Mass. 421, 5 N.E.3d 882 (2014) and *Bank of New York Mellon Corp. v. Wain*, 85 Mass.App.Ct. 498, 11 N.E.3d 633, 636, (Mass. App. Ct. 2014) Footnote 10, foreclosures without complying with Section 35A will not convey clear title.

207.    The ultimate troubling however of this controversy was that each and every pleading and motion the opposing lawyer submitted in the campaign to preclude adjudging the merits of this

matter was utterly frivolous and lacked any factual or legal support as pled herein, but yet Judge Talwani gave constant blind deference to these false pleadings being submitted by a lawyer under Rule 11 certifying to the court to be truthful, and consequently allowing these frivolous motions that lacked any factual basis and reversed case law precedent that district court lacked the authority to do, and dismissed the actions. These rulings were bias, arbitrary that lacked any factual or legal basis, therefore were unconstitutional and shall be reversed.

## THE RULINGS OF THE FIRST REMOVED 2015 ACTIONS: 15-12275 AND 15-13611 WERE BIAS AND REVERSED CASE LAW PRECEDENT

208.   Dismissed claim of fraudulent conveyance of the subject mortgage through the 2011 devious MERS assignment. The instant claim was dismissed allowing the opposing lawyer's motion for same arguing that: the plaintiff defaulted; the purported MERS assignment was valid because it was made by "MERS vice president"; the purported MERS assignment was valid because it was notarized and recorded with the registry of deeds, therefore petitioner lacked such standing.

209.   These averments were incorrect refuted by the following: plaintiff kept making the monthly payments until the mortgage was discharged and the servicing was abruptly charged and the replaced servicing refused to further accept the payment, see exhibit 1; contrary to what the opposing lawyer averred, the purported MERS assignment was not made by vice president of MERS, see copy of the purported assignment as exhibit 3; and contrary to what the opposing lawyer averred, the recording of an assignment of mortgage does not make fabricated instrument valid as the SJC instructed in *Bevilacqua v. Rodriguez, supra*. The SJC wrote: *"there is nothing magical in the act of recording an instrument with the registry that invests an otherwise meaningless document with legal effect.[] Recording is not sufficient in and of itself, however, to render an invalid document legally significant."* (emphasis added), (also keep in mind what the First Circuit said in *Wilson v. HSBC Mortgage Services, Inc.*, 744 F.3d 1, No. 13–1298, 2014 ( 1 St Cir): "We said in *Culhane [Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 289 (1st Cir.2013)] *that while this type of practice "can be disparaged on policy grounds, such policy judgments are for the legislature, not the courts"*).

210.   Nonetheless case law instructs to grant standing to challenge the validity of such devious MERS assignment that claimed to assign both the <u>mortgage</u> and <u>note</u> to PennyMac on behalf of Mortgage Lenders Network USA ("MLN") in 2011 when MLN was defunct and out business in 2007 was a clear evidence that said purported MERS assignment was fabricated and deceit. Therefore the purported MERS assignment could not be truthful as a matter of fact. Courts that reviewed such MERS assignments that purportedly were made on behalf of defunct entities rejected to find them valid. See *In re LOPEZ et al v. Mortgage Electronic Registration Systems, Inc.et al, supra*; see *In re Bailey v. Wells Fargo, supra*. These courts rejected the arguments that homeowner lacks the right to challenge the validity of such fabricated mortgage assignments.

Furthermore, courts that reviewed assignments of mortgage notes effectuated by MERS rejected to find them valid. The instant purported 2011 MERS assignment claimed to also grant the note to PennyMac which was another telling that the assignment was a deceit when MERS never had any ownership of the note. Quoting the First Circuit's remark on this issue: *"it is plain, however, that MERS never held the note"*. See footnote 8, *Culhane v. Aurora Loan Servs. of Nebraska*, 708 F.3d 282 (2013). *"The upshot of [MERS] does not have any beneficial interest in the loan"*, 708 F.3d @287. See also the Land Court's similar observation in *Schaefer-Ung v. U.S. Bank et al* 12 MISC 469684 in which the court (Judge Foster, June 10, 2014) questioned MERS assignments to assign the note.

211.    The next set of bias rulings rendered in the first actions were regarding denying petitioner that the instant verbal agreement was enforceable and by so doing reversing case law president of cases rendered by judges Young, Gorton (Honorable Dein done the legwork), Stearns and Magistrate Judge Bowler who rendered otherwise as detailed above.

212.    There was another bias ruling in the first action that reversed case law precedent regarding claim of unconscionability under G.L.c. 106 § 2-302. The claim was dismissed rendering that said statute applies only to sale of goods and not to mortgage. But see at least 10 courts both state and federal rendered otherwise.

213.    To the contrary, both state and federal Massachusetts courts have upheld the theory of unconscionability under G.L.c. 106 § 2-302 applied in mortgage and contract disputes as rendered by Massachusetts Appeals Court and the SJC; by this court: Judges Nelson, Zobel, and Young. See also 1810 case: *Boynton v. Hubbard*, 7 Mass. 112 (1810); *Kleinberg v. Ratett*, 252 N.Y. 236, 169 N.E. 289 (1929); *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir.1948); 14 S. Williston, Contracts § 1632 (3d ed. 1972)".

214.    The First Circuit affirmed the dismissal of 2015 removed action in one sentence (attached is a copy a exhibit 8) where the dismissals of the cited claims were a reversed of case law precedent; this was contrary to the principle of equal treatment to all under the law as mandated by the constitution and act of congress under 42 U.S.C. § 1981. The First Circuit affirming the district judge's ruling that plaintiff lacked the standing to challenge the MERS assignment of the note was contradictory to its own ruling rendered in *Culhane Supra* 708 F.3d 282 (2013). *"The upshot of [MERS] does not have any beneficial interest in the loan"*. These rulings that reversed case law precedent were unreasonable and so prejudicial to petitioner and unconstitutional.

## THE RULINGS IN ACTION 16-11982 WERE BIAS AND REVERSED CASE LAW PRECEDENT

215.    The main rulings rendered in this action 16-11982 affirming the opposing lawyer's motion to dismiss were related to unlawful filing the SCRA action in the Land Court to foreclose

when the validity of the subject mortgage was being determined in the first actions. (note that the dismissal of said claim was rendered after several months after the SCRA action was filed). The opposing lawyer argued that the petitioner cannot have such a claim for filing the SCRA action because the filing of the SCRA action was unrelated to foreclosure under G.L.c. 183, § 21. The argument was impossible to follow, however it was sustained and the instant claim was dismissed as well.

216.    Note that the ruling contradicted ruling rendered by other court. As noted above. The opposing lawyer made the same pathetic argument in the Najda's case that SCRA action has nothing to do with foreclosure process under G.L.c. 183 § 21 and therefore it should be dismissed citing also pointlessly the case of *HSBC Bank USA, N.A. vs. MATT*, 464 Mass. 193, 981 N.E.2d 710, (Mass. 2013). The Najda's court, Judge O'Toole, a seasoned judge, rejected this absurd argument and denied to dismiss that claim, and wrote, see FN7:

*"While servicemember proceedings are not technically part of foreclosure actions, see Matt, 981 N.E.2d at 715–16, at the motion to dismiss stage, the Najdas adequately allege that such an action is understood to be part of the foreclosure process in Massachusetts and that understanding damaged their property's marketability"* (emphasis added).

217.    It should also be noted that the opposing lawyer's argument was frivolous under Rule 11 when it is "either not well-grounded in fact or unwarranted by existing law. See *Cruz v. Savage*, 896 F.2d 626, 632 (1st Cir. 1990). The district court also made similar findings regarding pleadings requirements under Rule 11. Rule 11 requires [the opposing lawyer] to '**stop and think**' before making and submitting pleadings; or "*for insisting upon a position after it is no longer tenable*". The Rule "*also, emphasizes the duty of candor by subjecting litigants to potential sanctions*". These were quotations excerpted from Judge Stearns' article in *McCarty v. Verizon New England, Inc.*, # 1:09-cv-10991-RGS Doc# 37, dated 03/25/11  (emphasis added).

218.    There was a claim in said action for unlawful placed insurance in violation of 12 U.S.C. §§ 2605 k(1)(A) and (m); and 209 CMR 18.21(3). The opposing lawyer argued in support of his motion to dismiss that his clients had belief that petitioner did not have insurance. Judge Talwani sustained the motion and dismissed the claim. The dismissal was contradictory to due process that prohibits taking someone property without due process. The fees that were applied for such unlawful placed insurance when petitioner had ample coverage continuously in the past 26 years was unreasonable and indeed unconstitutional.

219.    The Court of Appeals also affirmed the dismissal of action 16-11982 which was not unexpected since appellate courts throughout the nation always affirm trial judges. However ironically after Judge Talwani dismissed the action and was affirmed, petitioner served pursuant to 93A Christina Trust, the claimed owner of the subject (void) mortgage, and notified it that it conduct seek to foreclose on void mortgage violates 15 U.S.C. § 1692f(6) that prohibits "*Taking*

*or **threatening** to take any nonjudicial action to effect dispossession or disablement of property if— **(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest"** (emphasis added).* As consequence the subject mortgage was reassigned back to PennyMac in November 2017 and a week later it was assigned to Wilmington Trust and Fay Servicing in which they moved to foreclose on a void mortgage and without complying with G.L.c. 244 § 35A and G.L.c. 244 § 35B that would make the prospective foreclosure unlawful leading to the 2018 action.

## THE RULINGS OF THE 2018 REMOVED ACTIONS: 18-11982 AND 18-11873 WERE EQUALLY BIAS AND REVERSED CASE LAW PRECEDENT

220.    This action as noted above invoked paragraph 22, an authority that grants such standing as was affirmed by various courts, see *Pinti Marroquin supra* to vindicate this matter specifically the validity of the 2011 fabricated mortgage assignment claimed was made by MERS. Petitioner filed action 18 MISC 000319 in the Land Court invoking said paragraph 22 that affords standing to vindicate the validity of the purported MERS assignment the mortgage and note. The action also claimed violation of G.L.c. 244 § 35A and G.L.c. 244 § 35B; said action also had claim that if the mortgage had not been void, petitioner should be entitled to adjudge what could be lawfully owed. The opposing lawyer once again removed the action followed with typical motion to dismiss making typical false arguments to justify dismissing the action.

221.    The opposing lawyer also filed a motion to sanction petitioner for seeking to vindicate this controversy under Paragraph 22 in the 2018 removed action. The arguments and averments submitted in the motions to dismiss and to sanction petitioner were utterly false. As noted above the argument of res judicata regarding vindicating the validity of the purported MERS assignment was frivolous because the merits were never adjudged, see the case law cited above, Judge Woodlock in *Okoye v. Bank of New York Mellon*,10–11563–DPW, July 28, 2011, 2011WL3269686 (D. Mass. 2011). He wrote, @ page 13: "*In order for claim preclusion to attach under the doctrine of res judicata, there must be "(1) a final judgment on the merits in an earlier action"*; see *Lemleson supra*, No. 12-10677-PBS, 2012 WL 4527527, *4 (D. Mass Sept. 28, 2012). Judge Saris wrote: "Magistrate Judge Collings determined that Lemelson lacked standing in federal court [] and recommended that I remand the case to state court pursuant to 28 U.S.C. § 1447(c). See Lemelson v. U.S. Bank Nat'l Ass'n, No. 11-cv-12050-PBS, Doc. 16 at 9 (D. Mass. Mar. 7, 2012)". Judge Saris concluded the ruling stating that "the dismissal **was without prejudice"** (emphasis added to stress that the dismissal of claims for lack of jurisdiction is a dismissal without prejudice in removals and shall be adjudged in the state court).

222.    In response to opposing lawyer's argument that his client were not required or willing to comply with G.L.c. 244 § 35A and G.L.c. 244 § 35B citing the Mackenzie supra. The argument was willfully frivolous and without any bases of fact or law. First as discussed above, the Mackenzie's case entailed HAMP modification in which there is no requirement to require the

mortgage acquirers to offer modification under HAMP. To the contrary, complying with G.L.c. 244 § 35A and G.L.c. 244 § 35B is statutory required under legislator intent enacted these two statues, G.L.c. 244 § 35A and G.L.c. 244 § 35B. This statutory compliance was affirmed by both state and federal courts. See *Schumacher U.S. Bank v. Schumacher, supra; Bank of New York Mellon Corp. v. Wain*, Footnote 10. "failure to comply with said Section 35A will not convey clear title; see then-Judge Saylor in *Stokes v. Wells Fargo* 13-13137-FDS dated June 12, 2014 who also affirmed that it is mandatory to comply with G.L.c. 244 § 35A and G.L.c. 244 § 35B.

223.    The opposing lawyer also frivolously averred to the court that the objective of said paragraph 22 was for notification only and nothing else citing pointlessly the Suffolk construction case supra. This was fraud on the court refuted by case law, *Pinti and Marroquin supra* that reeersed foreclosures for not complying with said paragraph 22. See *James B. Nutter & Co. v. Estate of Murphy*, 478 Mass. 664 (2018), "**when interpreting adhesion provisions courts seek to effectuate [] the meaning an objectively reasonable person would give to the language in the contract**. See, e.g., *Golchin v. Liberty Mut. Ins. Co.*, 466 Mass. 156, 159–160, 993 N.E.2d 684 (2013)", (emphasis added).

224.    The opposing lawyer frivolously argued that the cause of action to determine what could be owed if the mortgage had not been void should be dismissed under res judicata arguing that this should have been resolve in the 2015-2016 actions. The argument was utterly frivolous. There were countless entities that claimed ownership of the subject (void) mortgage subsequent to 2016. Moreover the notice of (alleged) debt served upon petitioner by the latest claimed acquirers of the subject mortgage served in September 2017 contradicted what the demand of the May 31, 2018. To deny such standing to resolve the discrepancy was unjustifiable and indeed unconstitutional. This shall not be sustained in this nation of law.

225.    Lastly the opposing lawyer's motion for sanction was indeed despicable legal practice since the law and facts supported adjudicating the 2018 removed action under the authority of paragraph 22 as affirmed by Pinti and Marroquin and countless other cases. The short of it, as outlined above, the endless pleadings the opposing lawyer averred above were indeed the pleading that Rule 11(b) expressly prohibits, and the type of consequence that Judge Young found it warranted and entered in the Nosek v. Ameriquest Mortgage Co.; Ablitt&Charlton, P.C. et al stating: *How could we (all of us who profess to be lawyers) have fallen so low?" [] We've been making these misrepresentations for years [and] no one seemed to care."*

226.    The sum of it is that the opposing lawyer employed pleadings to deceive the court endlessly. Judge Talwani gave unreasonable deference and sustained these frivolous pleadings that were false on their faces. The mantra of res judicata that played again and again was without any logic, merits or facts but Judge Talwanai sustained presumably just because were submitted under Rule 11(b) and by a lawyer, and this unlimited latitude and blind deference was indeed troubling where such rulings would result, and resulted in destroying the livelihood and career of

the petitioner. It was simply fraud on the court to employ this appalling legal practice that Rule 11 expressly prohibits to include citing false case law, like citing the Mackenzi case that was utterly disingenuous to deceive and exploit Judge Talwani's unlimited trust she afforded the opposing lawyer.

227.    Lastly, it is worthy to note a case identical to this case being tried in Middlesex Superior Court that entailed forging a deed in which the perpetrator sold the property for $750 thousand, see Nelson v. Chandler, BEE Investment et al, a 2018 case, 1881-cv-01355. In this case there was an individual, Chandler, aka Seymour, forged and fabricated a deed of a property in Brookline, and several months later he recorded the forged deeds, and on the same day he transferred the property to an associated conspirator and sold the property in the amount of $750 thousand (and yet a loanshark financed the sale where his lawyer turned the blind eye to such obvious fraudulent deed that had multiple red flags, rather the lawyers were interested to make the deal so they get paid).

228.    The Middlesex case was mentioned to note the similarity between the Middlesex case and this case in which both entailed fraudulent conveyances of real properties. One was conveyed by forged deed, and this case entailed such frequently conveyed by forged mortgage assignment in the name of MERS. In Massachusetts a mortgage is conveyance of legal title, see Ibanez @ 458 Mass. at 649. In other words, Massachusetts is a "title theory" State, in which a mortgage is a transfer of legal title to the property securing the debt from the mortgagor to the mortgagee, with the mortgagor retaining the equitable title, or equity of redemption, by which the mortgagor can redeem or reacquire legal title by paying the debt which the mortgage secures. Eaton, 462 Mass. at 575-576; see, e.g., Ibanez, 458 Mass. at 649; Perry, 330 Mass. at 263; Goodwin, 11 Mass. at 475; Maglione, 29 Mass. App.Ct. at 90. Because the mortgage is a conveyance, it follows that "the assignment of a mortgage is a conveyance of an interest in land." Ibanez, 458 Mass. at 649. In order to exercise the power of sale in a mortgage and foreclose upon the property, the party seeking to foreclose must hold the mortgage title, either as original mortgagee or by a valid assignment. G.L. c. 183, § 21; Ibanez, 458 Mass. at 647-648. A foreclosure by a person who does not hold the mortgage is void. Id. at 647. The mortgagor, owner of the equity of redemption, is entitled to protect that title"

229.    Invoking the constitution, acts of congress under 42 U.S.C. § 1981, 42 U.S.C. § 1983, along with the ruling of the First Circuit in *Mills v Harmon Law Offices, P.C., Salem Five Cents Savings Bank et al* , 344 F.3d 42 (2003) is the proper recourse to seek the following immediate and warranted relief. Keep in mind what the First Circuit said in MEEB supra 775 F.3d 109 @116: "a federal court must apply the substantive law of the forum in which it sits"); *see also O'Brien v. Skinner*, 414 U.S. 524, 531, 94 S.Ct. 740, 38 L.Ed.2d 702 (1974)".

230.    Petitioner was dragged to this court and he shall be entitled to the applicability of the Massachusetts law as instructed by said case law

231.    Petitioner brings this action to vacate the sanction order on the bases that it was simply unjustifiable and maliciously unconstitutional. Petitioner names the district judge as respondent to give her the forum to refute the allegations of bias rulings rendered against him. And in fairness, he also names the First Circuit should it elects to refute the allegations of rubberstamping these unconstitutional dismissals of Judge Talwani in these actions sustaining the opposing lawyer's frivolous motions to dismiss that were utterly baseless that lacked any factual or legal merits whatsoever.

232.    The action also seeks the reviewing court to act sua sponte and to consider sanction the opposing lawyer to constantly tender pleadings that Rule 11 and First Circuit controlling precedent prohibit regarding pleadings requirements expressly prohibit. Petitioner seeks any other relief that the court deemed just and appropriate.

**PRAYERS FOR RELIEF**

233.    **Prayer One**: Invoking the First Circuit's ruling in *Mills v Harmon Law Offices, P.C., Salem Five Cents Savings Bank et al* , 344 F.3d 42 (2003) and seek and respectfully request that May 13, 20219 dismissal and sanction order rendered in the 2018 removed action are vacated, and to respectfully request the court to order the remand of action 18MISC000319 back to Land Court;

234.    **Prayer Two**: In the alternative or together under the constitution and act of congress under 42 U.S.C. § 1981, 42 U.S.C. § 1983 to afford a short hearing pursuant to Rule 65(a)(2) Fed.R.Civ.P. for the adjudication of the main issue of this controversy, and to compel the claimed owner of the subject mortgage to provide evidence that illustrates that the mortgage had not been discharged in 2011 and claimed loss. Citing *Beaton v. Land Court,* 367 Mass. 385 @ 392, 326 N.E.2d 302, (1975) instructs: "If the obligation underlying the mortgage has been[]otherwise discharged, the mortgagor may maintain a suit to compel the cancellation of the note and a discharge of the mortgage in a form appropriate for recording. Perry v. Oliver, 317Mass.538, 541 (1945)." Should they provide any evidence that shows otherwise, the next relief is to adjudge what is or could be legally owed. To deny such standing, such constitutional rights mandated by the constitution and acts of congress under 42 U.S.C. § 1981, 42 U.S.C. § 1983 is simply unreasonable and unjustifiable;

235.    **Prayer Three:** Either on remand, or in the alternative, petitioner shall be entitled to relief of his damages specifically for the opposing lawyer's clients' defiance to comply with the applicable statutes including but not limited to G.L.c. 244 § 35A and G.L.c. 244 § 35B, specifically now they sent notice under said Section 35A in April 2021 but refused to confer; nevertheless the April 2021 notice illustrated that they were required to comply with G.L.c. 244 § 35A and G.L.c. 244 § 35B in 2018; petitioner further seek the defiance to comply with the

application of paragraph 22 as affirmed by *Pinti v Emigrant Mortgage Co.* 472 Mass 226, 33 N.E. 3d 1213 (2015); *Federal Natl. Mort. Assn. v. Marroquin*, 477 Mass. 82 (2017). The defiance to comply with said paragraph 22 and comply with said Section 35A forced petitioner to bankruptcy inflicting upon him grave irreparable harms and monetary damages that petitioner shall be entitled to relief under 93A of said damages to be determined at trial;

236.   **Prayer Four**: To grant any injunctive relief and any other relief that the court of conscience, equity and law find it just and appropriate.

**PARTIES**

237.   Plaintiff Jack Saade ("the plaintiff"), is a citizen of Massachusetts with a mailing address P.O.Box 15303 Boston MA 02215. Plaintiff engages in business.

238.   Respondent, the district Judge Talwani to afford her a forum refute the instant allegations.

239.   Respondent, the First Circuit is named as a respondent out of fairness to also afford it the forum to refute the instant allegations.

240.   Doe3 is future respondent/defendants.

**JURISDICTION AND VENUE**

241.   The Court has jurisdiction to hear matter invoking the US Constitution and acts of congress 42 U.S.C. § 1981, 42 U.S.C. § 1983 as the authorities to adjudicate this action.

242.   The controlling precedents of this circuit are additional authorities to adjudge this action.

Respectfully submitted,

Jack Saade
P.O.Box 15303
Boston, MA 02215                          Dated: January 14, 2022

I am the petitioner in the above referenced action with full and personal knowledge of the facts stated above, hereby depose that the foregoing facts are true and correct, to the best of my knowledge and belief. I the complainant have read the complaint, that the facts stated therein are true and that no material facts have been omitted therefrom

Signed under penalty of perjury
Jack Saade